UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| LABIB JANBAY, Individually and on Behalf of All Others Similarly Situated, ) ) ) | |
| Plaintiff, ) ) | No. 10-CV-4430 (RWS) |
| v. ) ) | |
| CANADIAN SOLAR INC., ARTHUR CHIEN, and SHAWN QU ) ) ) | |
| Defendants. ) ) | |

(Additional Captions Follow)


**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF PROPOSED
LEAD PLAINTIFF GEORGE STRUM FOR CONSOLIDATION, APPOINTMENT AS
LEAD PLAINTIFF AND THE APPROVAL OF HIS SELECTION OF LEAD COUNSEL**

| | | |
|---|---|---|
| KWAN YING YU, On Behalf of Herself And All Others Similarly Situated,<br><br>              Plaintiff,<br><br>              v.<br><br>CANADIAN SOLAR INC., SHAWN XIAOHUA QU, and ARTHUR CHIEN,<br><br>              Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 10-CV-4562 |
| JI SHU ZHANG, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>              Plaintiff,<br><br>              v.<br><br>CANADIAN SOLAR INC., SHAWN XIAOHUA QU, and ARTHUR CHIEN,<br><br>              Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 10-CV-4578 |
| SAID SABER, Individually and on Behalf of All Others Similarly Situated,<br><br>              Plaintiff,<br><br>              v.<br><br>CANADIAN SOLAR INC., ARTHUR CHIEN and SHAWN QU,<br><br>              Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 10-CV-4706 |

| | | |
|---|---|---|
| MORRIS PEDERSEN, Individually and On Behalf of All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | No. 10-CV-5091 |
| v. | ) ) | |
| CANADIAN SOLAR INC., SHAWN (XIAOHUA) QU, ARTHUR CHIEN, ROBERT K. MCDERMOTT, LARS-ERIC JOHANSSON, MICHAEL G. POTTER, DEUTSCHE BANK SECURITIES, INC., MORGAN STANLEY & CO. INCORPORATED and PIPER & JAFFRAY & CO., | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

| | | |
|---|---|---|
| TOM LENDA and ROSE LENDA, on behalf of themselves and all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | No. 10-CV-5434 |
| v. | ) ) | |
| CANADIAN SOLAR INC., SHAWN XIAOHUA QU and ARTHUR CHIEN, | ) ) ) | |
| Defendants. | ) ) | |

**TABLE OF CONTENTS**

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      POINT I -     THE ACTIONS SHOULD BE CONSOLIDATED . . . . . . . . . . . . . . . . . 7

      POINT II -    MOVANT SHOULD BE APPOINTED LEAD PLAINTIFF . . . . . . . . . . 7

      A.      The Procedure Required By The PSLRA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      B.      Movant Satisfies The "Lead Plaintiff" Requirements Of The PSLRA . . . . . . . . . 9

           1.      Movant Has Complied With The PSLRA
                 And Should Be Appointed Lead Plaintiff . . . . . . . . . . . . . . . . . . . . . . . . 9

           2.      Movant Has The Largest Financial Interest
                 In The Relief Sought By The Class . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

           3.      Movant Otherwise Satisfies Rule 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

      POINT III -   THE COURT SHOULD APPROVE MOVANT'S
                        CHOICE OF COUNSEL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Proposed Lead Plaintiff George Strum ("Movant") hereby respectfully submits this memorandum of law in support of his motion for: (i) appointment as Lead Plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"); and (ii) approval of Movant's selection of Weiss & Lurie and Stull, Stull & Brody as Co-Lead Counsel.

## INTRODUCTION

This is a class action brought on behalf of shareholders who purchased Canadian Solar, Inc. ("Canadian Solar" or the "Company") common stock between May 26, 2009 and June 1, 2010 (the "Class Period")[1], as well as all stock traceable to the October 22, 2009 follow-on public offering. The Class is seeking to pursue remedies under Rule 10b-5 and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") as well as the strict liability provisions of the Securities Act of 1933 (the "Securities Act") 15 U.S.C. §§ 77k, 77*l* and 77o, which provides liability for securities sold pursuant to a false and misleading Registration Statement and/or Prospectus.

Movant has suffered significant damages as a result of Defendants' misconduct. Movant now seeks to be appointed as Lead Plaintiff. Additionally, Movant seeks Court approval of his selection of Weiss & Lurie and Stull, Stull & Brody as Co-Lead Counsel. As discussed below, Movant has satisfied each of the requirements of the PSLRA and, therefore, is qualified for appointment as Lead Plaintiff.

---

[1] The many complaints filed assert multiple Class Periods. For the purpose of this motion, Movant applies for Lead Plaintiff for the broadest Class Period alleged.

**PROCEDURAL BACKGROUND**

On or about June 3, 2010 the first action, captioned <u>Janbay v. Canadian Solar International, Inc., et al.</u>, Case No. 10-cv-4430, was filed against Canadian Solar and various defendants in this Court. On June 3, 2010, later that day, notice of the pendency of the <u>Janbay</u> action was published on <u>BusinessWire</u>, advising members of the class of their right to move the Court to serve as lead plaintiff no later than sixty (60) days from the date of publication of the Notice, <u>i.e.</u>, by August 2, 2010. Subsequently, five additional related actions were filed in this Court,[2] as well as one case filed in the Northern District of California.[3] Pursuant to the Private Securities Litigation Reform Act, Movant submits this memorandum of law in support of his motion for appointment as Lead Plaintiff and approval of his selection of counsel.

**STATEMENT OF FACTS**

Canadian Solar is one of the world's largest solar module producers and designs, manufactures, and sells solar module products that convert sunlight into electricity for a variety of uses. The Company's products include a range of standard solar modules for use in a wide range of residential, commercial, and industrial solar power generation systems.

On May 26, 2009, the Company issued a press release announcing its financial results for

---

[2]   The captions for the five additional Southern District cases, in chronological order, are: <u>Yu v. Canadian Solar, Inc., et al.</u>, Case No. 10-cv-4562; <u>Zhang v. Canadian Solar, Inc., et al.</u>, Case No. 10-cv-4578; <u>Saber v. Canadian Solar, Inc., et al.</u>, Case No. 10-cv-4706; <u>Pederson v. Canadian Solar, Inc., et al.</u>, Case No. 10-cv-5091; and <u>Lenda et al. v. Canadian Solar Inc., et al.</u>, Case No. 10-cv-5434.

[3]   The caption is <u>Shrestha v. Canadian Solar, Inc., et al.</u>, Case No. 10-cv-2702 (JF) (HRL) (N.D. Ca.). Movant is moving for Lead Plaintiff in the California case as well, but believes that the proper forum for the prosecution of the claims asserted lies in the Southern District of New York. Movant, therefore, intends to transfer the California action to this District after his appointment as Lead Plaintiff.

the first quarter ended March 31, 2009.  The Company reported net revenues of $49.5 million, compared to $171.2 million in the first quarter of 2008.  The Company also reported net loss of $4.8 million, or $0.13 per diluted share, compared to net income of $18.6 million, or $0.57 per diluted share in the first quarter of 2008.  In commenting on these results, Defendant Qu stressed the Company's "prudent financial management" and "positive long-term view."  He touted the Company's "conservative shipment strategy" and further stated "[w]e have started to see success in our strategy as demonstrated by our increased sales into few non-traditional markets such as Korea and China."

On June 8, 2009, the Company filed its annual report on a Form 20-F for the year ended December 31, 2008 with the SEC, which was signed by defendant Qu.  The Form 20-F represented that sales are recorded when products are delivered and "title has passed to customers."  It further stated that "The Company only recognizes revenues when prices to the seller are fixed or determinable, and collectibility is reasonably assured. . . . Sales agreements typically contain the customary product warranties but do not contain any post-shipment obligations nor any return or credit provisions."

On August 6, 2009, the Company issued a press release announcing its financial results for the second quarter ended June 30, 2009.  The Company reported net revenues of $114.2 million and net income of $17.7 million, compared to $212.6 million and $12.1 million, respectively, in the same period of the prior year.  Defendant Qu commented on the results, stating, in relevant part:

> Our second quarter revenue came in well ahead of expectations as we benefitted from robust customer orders around the world.  We are glad that we took a conservative financial management strategy in Q4 of 2008 and Q1 this year, including prudent inventory measures and cash management, which allowed us to

3

> compete in Q2 with low materials and financing costs.  These advantages, combined with our competitive processing costs and lean operating structure, resulted in a significant improvement in our gross margin and net margin, and position us for success in future quarters.  We have noticed that many customers and their financing banks choose Canadian Solar products due to our competitive prices, product quality and strength of our balance sheet.  Our flexible vertical integration business model, reputation for high-quality and our solid customer relationships allow us not only to compete, but also to gain market share in a tough economic environment.

On October 14, 2009, the Company filed a Form 6-K with the SEC, which in addition to representing that the Company's financial statements were presented in accordance with GAAP, once again represented that the Company's only "record[s] sales of modules and silicon material when products are delivered and title has passed to the customers.  We only recognize revenues when prices to the seller are fixed or determinable, and collectibility is reasonably assured.  Revenues also include reimbursements of shipping and handling costs of products sold to customers.  Sales agreements typically contain customary product warranties but do not contain any post-shipment obligations nor any return or credit provisions."

On October 22, 2009, the Company announced the completion of follow-on public offering of its common stock.  In total, the Company sold 6.9 million shares of common stock at a public offering price of $15.75 per share, including 900,000 shares purchased by the underwriters in connection with their exercise, in full, of their option to purchase additional shares in connection with the offering.  The Company received total net proceeds of approximately $103.3 million.

On November 17, 2009, the Company issued a press release announcing its financial results for the third quarter ended September 30, 2009.  The Company reported net revenues of $213.1 million and net income of $25.3 million for the third quarter, compared to and $252.4

4

million and $11.1 million, respectively, for the third quarter of 2008. Moreover, the Company reiterated its "fourth quarter 2009 guidance of shipments of approximately 128 MW to 138 MW, with gross margin expected to be in the high-teens on a percentage basis. We expect shipments of approximately 295 MW to 305 MW for the full year 2009."

On March 3, 2010, the Company issued a press release announcing its financial results for the fourth quarter and year ended December 31, 2009. The Company reported net revenues of $287.0 million and net income of $14.9 million, compared to net revenues of $68.8 and net loss of $49.2 million, respectively, for the fourth quarter of 2008. For the full year 2009, net revenues were $663.8 million and net income was $53.1 million, compared to $705.0 million and a net loss of $7.5 million, respectively, for the prior year. Qu commented on the results, stating, that the fourth quarter 2009 was "a record for both our quarterly revenue and shipments. The rapid quarterly shipment and revenue increase we achieved is due to our world-wide market share growth and improving cost structure. We delivered products to more than 300 customers in seven core country markets and 18 secondary markets."

On June 1, 2010, after the market closed, Canadian Solar shocked the market, disclosing for the first time that it was delaying "the release of its full financial results for the first quarter ended March 31, 2010, as a result of the commencement of an investigation by the Audit Committee of the Company's Board of Directors." Specifically, the investigation was launched after the Company received a subpoena from the SEC "requesting documents from the Company relating to, among other things, certain sales transactions in 2009." In addition, the Company also disclosed that 4Q09 and full year 2009 net revenues might be revised downward "due to the

company's intention to recognize sales only after receiving full cash payments from certain customers and due to certain subsequent return of goods after the quarter end."

As a result, following the Company's disclosures, Canadian Solar stock dropped to a low of $9.25 and closed down $1.69 to close at $10.17 - a drop of more than 14% - on extremely heavy volume of over 8.5 million, an increase of 287% from the prior day's trading.

Throughout the Class period, Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations and prospects.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose: (i) that the Company's financial results were overstated as the Company had recorded revenue from sales for which it had not been paid; (ii)  that certain goods had been returned after the end of the fourth quarter of 2009; (iii) that the Company's internal and disclosure controls with respect to its revenue recognition policy were materially deficient; (iv) that as a result of the foregoing, the Company's financial results were not prepared in accordance with Generally Accepted Accounting Principles ("GAAP"); (v) that the Company lacked adequate internal and financial controls; (vi) that, as a result of the above, the Company's financial statements during the Class Period were materially false and misleading at all relevant times; and (vii) based on the foregoing, defendants lacked a basis for their positive statements about the Company, its prospects and growth.

As a result of Defendants' wrongful acts and omissions, and the steep decline in the share price of Canadian Solar securities, Movant and other Class members have suffered significant losses and damages.

6

# ARGUMENT

## POINT I

### THE ACTIONS SHOULD BE CONSOLIDATED

The captioned actions involve class action claims on behalf of the purchasers of Canadian Solar securities and assert essentially similar and overlapping class claims for relief brought on behalf of the purchasers of Canadian Solar securities. Consolidation is appropriate where, as here, there are actions involving common questions of law or fact. See Fed. R. Civ. P. 42 (a); Johnson v. Celotex Corp., 899 F.2d 1281, 1284 (2d Cir.), cert. denied, 498 U.S. 920 (1990). That test is met here and the Actions should be consolidated.

## POINT II

### MOVANT SHOULD BE APPOINTED LEAD PLAINTIFF

**A.    The Procedure Required By The PSLRA**

The PSLRA has established a procedure that governs the appointment of a lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(1).; see also 15 U.S.C. § 77z-1(a)(1) (Securities Act).

First, the plaintiff who files the initial action must publish a notice to the class, within 20 days of filing the action, informing class members of their right to file a motion for appointment as lead plaintiff. 15 U.S.C. § 77z-1(a)(3)(A)(i); 15 U.S.C. § 78u-4(a)(3)(A)(i). Plaintiff in the Janbay action caused notice to be published on BusinessWire on June 3, 2010.[4] See Declaration

---

[4] Wire services have consistently been recognized as a suitable vehicle for meeting the statutory requirement that notice be published "in a widely circulated national business-oriented publication or wire service." See Lax v. First Merchants Acceptance Corp., 1997 U.S. Dist.

7

of Joseph H. Weiss ("Weiss Decl."), Ex. A.  Within 60 days after publication of the notice, any person or group of persons who are members of the proposed class may apply to the Court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action. 15 U.S.C. § 77z-1 (a)(3)(A) and (B); 15 U.S.C. § 78u-4 (a)(3)(A) and (B).

Second, the PSLRA provides that within 90 days after publication of the notice, the Court shall consider any motion made by a class member and shall appoint as lead plaintiff the member or members of the class that the Court determines to be most capable of adequately representing the interests of class members.  15 U.S.C. § 77z-1 (a)(3)(B); 15 U.S.C. § 78u-4 (a)(3)(B).  In determining the "most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that - -
>
> (aa)   has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb)   in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc)   otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4 (a)(3)(B)(iii).  <u>See generally</u> <u>Greebel v. FTP Software</u>, 939 F. Supp. 57, 64 (D. Mass. 1996).

---

LEXIS 11866 at *2 (N.D. Ill. Aug. 6, 1997).

8

**B.      Movant Satisfies The "Lead Plaintiff" Requirements Of The PSLRA**

    **1.      Movant Has Complied With The PSLRA
                And Should Be Appointed Lead Plaintiff**

The time period in which class members may move to be appointed lead plaintiff under 15 U.S.C. § 78u-4 (a)(3)(A) and (B) expires on August 2, 2010.  Pursuant to the provisions of the PSLRA and within the requisite time frame after publication of the required notice (published on June 3, 2010), Movant herein timely moves this Court to be appointed Lead Plaintiff on behalf of all members of the Class.

Movant is willing to serve as a representative party on behalf of the Class as evidenced by his duly executed certification.  See Weiss Decl. Ex. B.  In addition, Movant has selected and retained experienced and competent counsel to represent him and the Class.  See Weiss Decl. Exs. D and E.

Accordingly, Movant has satisfied the individual requirements of 15 U.S.C. § 77z-1 (a) (3)(B) and 15 U.S.C. § 78u-4 (a) (3)(B) and is entitled to have his application for appointment as Lead Plaintiff and his selection of Lead Counsel, as set forth herein, considered and approved by the Court.

    **2.      Movant Has The Largest Financial Interest
                In The Relief Sought By The Class**

According to  15 U.S.C. § 77z-1 (a) (3)(B) and 15 U.S.C. § 78u-4 (a)(3)(B), the court shall appoint as lead plaintiff the class member or members who represent the largest financial interest in the relief sought by the class.

During the Class Period, as evidenced by, among other things, the accompanying signed certification, Movant suffered significant damages as a result of Defendants' misconduct. See Weiss Decl. Ex. C.

Moreover, Movant is unaware of any other plaintiff or lead plaintiff applicant who has a larger financial interest in the relief sought. As such, Movant has the greatest financial interest in the relief sought by the class in this litigation. Movant satisfies all of the PSLRA's prerequisites for appointment as Lead Plaintiff and should be appointed Lead Plaintiff pursuant to 15 U.S.C. § 77z-1 (a) (3)(B) and 15 U.S.C. § 78u-4 (a)(3)(B) .

### 3. Movant Otherwise Satisfies Rule 23

According to 15 U.S.C. § 77z-1 (a) (3)(B) and 15 U.S.C. § 78u-4 (a) (3)(B), in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Of the four prerequisites to class certification, only two -- typicality and adequacy -- directly address the personal characteristics of the class representative. Consequently, in deciding a motion to serve as lead plaintiff, the Court should focus its inquiry on the typicality and adequacy prongs of Rule 23(a). Lax v. First Merchants, 1997 U.S. Dist. LEXIS 11866, at

*20; Fischler v. Amsouth Bancorporation, 1997 U.S. Dist. LEXIS 2875, at *7-8 (M.D. Fla. Feb. 6, 1997).

Here, the Movant satisfies both the typicality and adequacy requirements of Rule 23, thereby justifying his appointment as Lead Plaintiff.  Typicality exists if claims "arise[] from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  See In re Drexel Burnham Lambert Group, Inc., 960 F.2d 285, 291 (2d Cir. 1992), cert. dismissed sub nom., 506 U.S. 1088 (1993).  However, the claims of the class representative need not be identical to the claims of the class to satisfy typicality.  Instead, the courts have recognized that:

> [T]he typicality requirement may be satisfied even if there are factual dissimilarities or variations between the claims of the named plaintiffs and those of other class members, including distinctions in the qualifications of the class members.

Bishop v. New York City Dept. of Housing Preservation and Development, 141 F.R.D. 229, 238 (2d Cir. 1992);  See also Avagliano v. Sumitomo Shoji America, Inc., 103 F.R.D 562, 582 (S.D.N.Y. 1984).

As set forth above, Movant seeks to represent a class of investors in Canadian Solar common stock pursuing claims under the Securities and Exchange Act.  Thus, typicality is satisfied since the claims asserted by Movant arises "from the same event or course of conduct that gives rise to claims of other class members and the claims are based on the same legal theory."  Walsh v. Northrop Grumman Corp., 162 F.R.D. 440, 445 (E.D.N.Y.  1995).

Under Rule 23(a)(4) the representative party must also "fairly and adequately protect the interests of the class."  The standard for adequacy of representation under Rule 23(a)(4) is met by: (1) the absence of potential conflicts between the named plaintiff and the class members, and

11

(2) the class representative's choice of counsel who is qualified, experienced and able to vigorously conduct the proposed litigation. Garfinkel v. Memory Metals, Inc., 695 F. Supp. 1397, 1405 (D. Conn. 1988).

Here, Movant is the most adequate representative of the Class. The interests of Movant are clearly aligned with the members of the Class and there is no evidence of any antagonism between Movant's interests and those of the other members of the Class he seeks to represent. In addition, as shown below, Movant's proposed Co-Lead Counsel is highly qualified, experienced and able to conduct this complex litigation in a professional manner. Thus, Movant prima facie satisfies the typicality and adequacy requirements of Rule 23.

## POINT III

### THE COURT SHOULD APPROVE MOVANT'S CHOICE OF COUNSEL

Pursuant to 15 U.S.C. § 77z-1 (a)(3)(B)(v) and 15 U.S.C. § 78u-4 (a)(3)(B)(v), the lead plaintiff shall, subject to Court approval, select and retain counsel to represent the class he seeks to represent. In that regard, Movant have selected Weiss & Lurie and Stull, Stull & Brody to serve as Co-Lead Counsel. Weiss & Lurie and Stull, Stull & Brody have extensive experience in successfully prosecuting shareholder and other class actions, and have frequently appeared in major actions in this and other courts. See Weiss Decl. Exs. D and E.

## **CONCLUSION**

For all the foregoing reasons, Movant respectfully requests that the Court grant his request for appointment as Lead Plaintiff and approve his selection of Co-Lead Counsel.

Dated: August 2, 2010

                                                WEISS & LURIE

By:   /s/ Joseph H. Weiss
       Joseph H. Weiss
       Mark D. Smilow
       Joshua M. Rubin
       WEISS & LURIE
       551 Fifth Avenue
       New York, New York 10176
       (212) 682-3025
       (212) 682-3010 (Fax)

       Jules Brody
       STULL STULL & BRODY
       6 East 45th Street
       New York, New York 10017
       (212) 687-7230
       (212) 490-2022 (Fax)

       Attorneys for Movant
       George Strum