UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FILED
12-22-10

------------------------------------X
LABIB JANBAY, Individually and on behalf
of all others similarly situated,

       Plaintiff,    10 Civ. 4430 (RWS)

   v.           OPINION

CANADIAN SOLAR, INC., ARTHUR CHIEN, and
SHAWN QU,

       Defendants.
------------------------------------X
KWUN YING YU, Individually and on behalf
of all others similarly situated,

       Plaintiff,    10 Civ. 4562 (RWS)

   v.           OPINION

CANADIAN SOLAR, INC., ARTHUR CHIEN, and
SHAWN QU,

       Defendants.
------------------------------------X
JI SHU ZHANG, Individually and on behalf
of all others similarly situated,

       Plaintiff,    10 Civ. 4578 (RWS)

   v.           OPINION

CANADIAN SOLAR, INC., ARTHUR CHIEN, and
SHAWN QU,

       Defendants.
------------------------------------X
[Captions continued on following page]

```
---------------------------------------X
SAID SABER, Individually and on behalf
of all others similarly situated,

                        Plaintiff,          10 Civ. 4706 (RWS)

            v.                                  OPINION

CANADIAN SOLAR, INC., ARTHUR CHIEN, and
SHAWN QU,

                        Defendants.
---------------------------------------X
MORRIS PEDERSEN, Individually and on
behalf of all others similarly situated,

                        Plaintiff,          10 Civ. 5091 (RWS)

            v.                                  OPINION

CANADIAN SOLAR, INC., ARTHUR CHIEN,
SHAWN QU, ROBERT K. McDERMOTT,
LARS-ERIC JOHANSSON, MICHAEL G. POTTER,
DEUTSCHE BANK SECURITIES, INC.,
MORGAN STANLEY & CO., INC., and
PIPER JAFFRAY & CO.,

                        Defendants.
---------------------------------------X
ROSE and TOM LENDA, Individually and on
behalf of all others similarly situated,

                        Plaintiffs,         10 Civ. 5434 (RWS)

            v.                                  OPINION

CANADIAN SOLAR, INC., ARTHUR CHIEN, and
SHAWN QU,

                        Defendants.
---------------------------------------X
```

A P P E A R A N C E S:

Attorneys for Movant CSIQ Investor Group

HAGENS BERMAN SOBOL SHAPIRO LLP
One Main Street, 4th Floor
Cambridge, MA  02142
By:  David S. Nalven, Esq.

715 Hearst Avenue, Suite 202
Berkeley, CA  94710
By:  Reed R. Kathrein, Esq.

Attorneys for Movant Harry Tabak

KLAFTER, OLSEN & LESSER, LLP
Two International Drive, Suite 350
Rye Brook, NY  10573
By:  Jeffrey A. Klafter, Esq.

BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA  19103
By:  Todd S. Collins, Esq.

Attorneys for Movant Canadian Solar Investors Group

POMERANTZ HAUDEK BLOCK GROSSMAN & GROSS LLP
100 Park Avenue, 26th Floor
New York, NY  10017
By:  Jeremy A. Lieberman, Esq.

Attorneys for Movant George Strum

WEISS & LURIE
551 Fifth Avenue
New York, NY  10176
By:  Joseph H. Weiss, Esq.

Attorneys for Movant Kenneth Lee

ROBBINS GELLER RUDMAN & DOWD LLP
58 South Service Road, Suite 200
Melville, NY  11747
By:  David A. Rosenfeld, Esq.

<u>Attorneys for Movant Ahmed Chaudhry</u>

FARUQI & FARUQI, LLP
369 Lexington Avenue, 10th Floor
New York, NY  10017
By:  Shane T. Rowley, Esq.

<u>Attorneys for Movant Nhan Nguyen</u>

THE ROSEN LAW FIRM P.A.
275 Madison Avenue, Suite 3400
New York, NY  10016
By:  Phillip C. Kim, Esq.

<u>Attorneys for Movant Qian Wang</u>

KAHN SWICK & FOTI, LLC
500 5th Avenue, Suite 1810
New York, NY  10110
By:  Kim E. Miller, Esq.

<u>Attorneys for Defendant Canadian Solar Inc.</u>

LATHAM & WATKINS LLP
233 South Wacker Drive, Suite 5800
Chicago, IL  60606
By:  Matthew L. Kutcher, Esq.

Sweet, D.J.

Presently pending before the Court are six securities class actions (collectively the "Action") brought on behalf of all persons or entities (the "Class") who purchased or otherwise acquired securities of Defendant Canadian Solar, Inc. ("Canadian Solar" or the "Company") between May 26, 2009 and June 1, 2010, inclusive (the "Class Period").[1] Violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder are alleged against Canadian Solar, Arthur Chien, Shawn Qu, and various other Defendants (collectively referred to as "Defendants").

Several motions have been made for consolidation pursuant to Federal Rules of Civil Procedure 42 and for appointment as lead plaintiff in the consolidated action, pursuant to 15 U.S.C. § 78u-4 of the Exchange Act, as amended by Section 101(a) of the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), and for approval of lead counsel.   In addition, one proposed lead plaintiff, the CSIQ Investor Group, has moved to transfer the consolidated cases to the Northern District of California, pursuant to 28 U.S.C. § 1404(a).

---

1     Various class periods have been alleged in the actions pending, with May 26, 2009 as the earliest beginning date for the period.

The competing proposed lead plaintiffs and their alleged financial interests are as follows:

| MOVANT | ALLEGED FINANCIAL INTEREST |
|---|---|
| CSIQ Investor Group[2] | $595,854.27 |
| Harry Tabak ("Tabak") | $489,503.00 |
| Canadian Solar Investors Group ("CSIG")[3] | $472,508.00 |

Additional motions were withdrawn or abandoned for the following reasons:  movants Kenneth Lee and Nhan Tran Nguyen acknowledged that they do not have the largest financial interest and movants Qian Wang, George Strum, Ahmed Chaudry, Armen Poghosyan, Pawel Masalski, Gabriella Wirschke and Foglio (USA) Inc. did not submit opposition or reply papers.

For the reasons set forth below, the actions are consolidated, the CSIQ Investor Group is appointed lead plaintiff, Hagens Berman Sobol Shapiro LLP is appointed lead counsel, Tabak is appointed co-lead plaintiff and Berger & Montague, P.C., and Klafter Olsen & Lesser LLP are appointed co-lead counsel.  The Court reserves the ability to alter this structure at any time and for any reason, and will do so if it finds that the progress of the

---

2   The CSIQ Investor Group consists of class members Michael Goldstein, Ali Alemi, John Szczypinski, Bansidhar Datta, Rojwol Shrestha, Eric Spiegel and James Cole.
3   CSIG consists of GHP Arbitrium AG, Alberto DeLeon and Scott Kroeker.

litigation is being delayed, that expenses are being unnecessarily enlarged, or if the structure established proves detrimental, in any way, to the best interests of the proposed class.

In addition, based on the facts and conclusions set forth below, the CSIQ Investor Group's motion to transfer is denied.

## I.   PRIOR PROCEEDINGS AND FACTS

Six complaints were filed in the Southern District of New York:   (1) Janbay v. Canadian Solar, Inc. et al., No. 10 Civ. 4430 (S.D.N.Y.), filed June 3, 2010; (2) Yu v. Canadian Solar, Inc. et al., No. 10 Civ. 4562 (S.D.N.Y.), filed June 10, 2010; (3) Zhang v. Canadian Solar, Inc. et al., No. 10 Civ. 4578 (S.D.N.Y.), filed June 11, 2010; (4) Saber v. Canadian Solar, Inc. et al., No. 10 Civ. 4706 (S.D.N.Y.), filed June 16, 2010; (5) Pedersen v. Canadian Solar, Inc. et al., No. 10 Civ. 5091 (S.D.N.Y.), filed July 2, 2010; and (6) Lenda v. Canadian Solar, Inc. et al., No. 10 Civ. 5434 (S.D.N.Y.), filed July 16, 2010.[4]  The Class Period alleged in the complaints varies, with May 26, 2009 as the earliest beginning date, and October 13, 2009, November 17, 2009 and March 3, 2010 as other possible Class Period beginning dates.

---

[4]     In addition, one related action was filed in the Northern District of California on June 21, 2010.  Shrestha v. Canadian Solar, Inc. et al., No. 10 Civ. 2702 (N.D. Cal.).  Several parties filed lead plaintiff motions in that court.  However, by Order dated September 13, 2010, the Honorable Jeremy Fogel continued a hearing on those motions pending this Court's decision on the instant motion to transfer.

Canadian Solar is a vertically integrated manufacturer of silicon, ingots, wafers, cells, solar modules and custom designed solar power applications. Canadian Solar, which delivers its solar power products to customers worldwide, was founded in 2001 in Ontario, Canada and listed on the NASDAQ exchange in 2006. The Company has a registered office in Kitchener, Ontario, Canada. Its executive offices and main operations, including its manufacturing, finance and accounting functions, are located in the People's Republic of China. Canadian Solar operates in the United States through its wholly-owned subsidiary, Canadian Solar (USA) Inc., which is based in San Ramon, California.

The complaints allege that throughout the Class Period, Canadian Solar and Defendants knowingly or recklessly made false and/or misleading public statements and/or failed to disclose the following: (1) it was uncertain whether the Company would receive full cash payments for sales made to certain customers; (2) certain goods sold were later returned; (3) as a result, the Company's financial results were overstated during the Class Period; (4) the Company lacked adequate internal and financial controls; and (5) as a result of these failures, the Company's financial statements were materially false and misleading at all relevant times.

The complaints further allege that on June 1, 2010, after the close of the market, Canadian Solar disclosed that it had received a subpoena from the Securities and Exchange Commission ("SEC"). The SEC subpoena requested documents from Canadian Solar related to certain sales transactions in 2009. The Company disclosed that its Audit Committee had retained outside counsel and independent forensic accountants to assist in reviewing the transactions described in the SEC subpoena. As a result, the Company postponed the release of its full financial results for the first quarter ended March 31, 2010, and its quarterly conference call scheduled for June 2, 2010. Canadian Solar also announced that its first quarter operating results would be updated, and that its fourth quarter 2009 net revenue numbers might be revised due to the Company's intention to recognize sales only after receiving full cash payments from certain customers and due to certain subsequent return of goods after the quarter end. The next trading day, Canadian Solar's share price declined 14.25%, to close at $10.17 per share, on unusually heavy trading volume.

It is further alleged that on July 27, 2010, the Company announced that it had received a letter from the NASDAQ Stock Market, dated July 21, 2010, notifying the Company that it was not in compliance with the requirements for continued listing as set forth in NASDAQ Listing Rule 5250(c)(1), because it did not timely

file its annual report on Form 20-F for the year ended December 31,
2009.

On June 3, 2010, counsel in the first filed action
against Canadian Solar, Janbay v. Canadian Solar, Inc. et al., No.
10 Civ. 4430 (S.D.N.Y.), caused a notice to be published, pursuant
to 15 U.S.C. § 78u-4(a)(3)(A)(i), which announced that a securities
class action had been filed against Canadian Solar and advised
putative Class members that they had 60 days from June 3, 2010, to
file a motion for appointment as lead plaintiff in the action.  The
60-day time period for Class members to move to be appointed lead
plaintiff under 15 U.S.C. § 78u-4(a)(3)(A)(b) expired on August 2,
2010.  See Fed. R. Civ. P. 6(a)(3).

The instant motions were heard and marked fully submitted
on September 29, 2010.  There is no opposition to the consolidation
motions.

## II.  THE ACTIONS ARE CONSOLIDATED

The PSLRA provides that "[i]f more than one action on
behalf of a class asserting substantially the same claim or claims
arising under this chapter has been filed," the Court shall not
make the determination of the most adequate plaintiff "until after
the decision on the motion to consolidate is rendered."  15 U.S.C.

§ 78u-4(a)(3)(B)(ii).   Thereafter, the Court "shall appoint the most adequate plaintiff as lead plaintiff for the consolidated actions . . . ."  Id.

Consolidation is appropriate where actions before the Court involve common questions of law or fact.  See Fed. R. Civ. P. 42(a).  These six putative class actions each seek relief on behalf of classes of persons and entities that traded in Canadian Solar securities during slightly different class periods,[5] claiming violations of the federal securities laws under Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder. Since the six actions assert virtually identical claims based on virtually identical factual allegations, they are well-suited for consolidation and are therefore consolidated.

## III. THE CSIQ INVESTOR GROUP IS APPOINTED LEAD PLAINTIFF AND TABAK IS APPOINTED CO-LEAD PLAINTIFF

### A.   The PSLRA Procedure

The PSLRA establishes a statutory presumption that a party is the most adequate plaintiff on a showing that it:

> (aa) has either filed the complaint or made a
> motion in response to a notice . . . ;

---

5    Although the complaints allege slightly different Class Periods, such differences are insufficient to undermine the efficiencies gained by consolidating these related cases.  See, e.g., Freudenberg v. E*Trade Fin. Corp., Nos. 07 Civ. 8538, 07 Civ. 8808, 07 Civ. 9651, 07 Civ. 10400, 07 Civ. 10540, 2008 WL 2876373, at *3 (S.D.N.Y. July 16, 2008).

> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Once it is determined who among the movants seeking appointment as lead plaintiff is the presumptive lead plaintiff, the presumption can be rebutted only upon proof by a member of the purported class that the presumptive lead plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

## B.    The CSIQ Investor Group is Appointed Lead Plaintiff

For the reasons set forth below, the CSIQ Investor Group is the "most adequate plaintiff."  The CSIQ Investor Group timely moved for appointment as lead plaintiff in accordance with the PSLRA on August 2, 2010.

1.    **The CSIQ Investor Group Has the**
      **Largest Financial Interest**


Since the PSLRA does not establish a method for
calculating the financial interests of competing movants, courts
have adopted a four-factor test first promulgated in Lax v. First
Merchants Acceptance Corp., Nos. 97 Civ. 2715 et al., 1997 WL
461036, at *5 (N.D. Ill. Aug. 11, 1997).  Under this test, the
Court is to consider the following factors: "(1) the number of
shares purchased during the class period; (2) the number of net
shares purchased during the class period (i.e. the number of
shares retained during the period); (3) the total net funds
expended during the class period; and (4) the approximate loss
suffered during the class period." Strougo v. Brantley Capital
Corp., 243 F.R.D. 100, 104 (S.D.N.Y. 2007).  Of these factors,
the fourth is viewed as the most important.  See Reimer v. Ambac
Fin. Group, Inc., Nos. 08 Civ. 411, 08 Civ. 1273, 08 Civ. 1825,
08 Civ. 1918, 2008 WL 2073931, at *3 (S.D.N.Y. May 9, 2008);
Vladimir v. Bioenvision, Inc., No. 07 Civ. 6416, 2007 WL 4526532,
at *5 (S.D.N.Y. Dec. 21, 2007); Kaplan v. Gelfond, 240 F.R.D. 88,
93 (S.D.N.Y. 2007).


Based on the loss calculations submitted by the various
investors, the CSIQ Investor Group has the largest financial
interest in the litigation, with losses in the period October 13,
2009 through June 1, 2010 of $595,854.27.  During that same

period, Tabak allegedly lost $496,320.00 and CSIG allegedly lost
$472,508.[6]  In the same period, the CSIQ Investor Group had
65,295 net shares purchased, more than 22,000 net shares more
than the next movant.  Using the longer Class Period, beginning
May 26, 2009, the CSIQ Investor Group still has the largest
number of net shares purchased, with 55,795, approximately 14,695
net shares more than the next movant.  Accordingly, with the
largest losses and the largest number of net shares purchased,
the CSIQ Investor Group is presumed to have the largest financial
interest and is therefore the presumptive lead plaintiff.

### 2.    *The CSIQ Investor Group Is an Appropriate Group*

The PSLRA explicitly permits a "group of persons" to
serve as lead plaintiff.  See 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I);
see also In re Cendant Corp. Litig., 264 F.3d 201, 266 (3d Cir.
2001).  However, the appointment of an aggregation of unrelated
plaintiffs as lead counsel risks "defeat[ing] the purpose of
choosing a lead plaintiff."  In re Donnkenny Inc. Sec. Litig.,
171 F.R.D. 156, 157 (S.D.N.Y. 1997).  "Appointing lead plaintiff
on the basis of financial interest, rather than on a 'first come,
first serve' basis, was intended to ensure that institutional

---

6    Although CSIG alleges losses of $830,809.00 using the First-In-First-Out
("FIFO") methodology, this methodology has been widely rejected because it
artificially inflates losses of the movant.  See, e.g., In re ESpeed, Inc.
Sec. Litig., 232 F.R.D. 95, 101 (S.D.N.Y. 2005) (rejecting FIFO method for
calculating financial interest because it ignores gains that may have accrued
to plaintiffs during the class period due to inflation of stock price).

plaintiffs with expertise in the securities market and real
financial interests in the integrity of the market would control
the litigation, not lawyers." Donnkenny, 171 F.R.D. 158; see
also In re Razorfish, Inc. Sec. Litig., 143 F. Supp. 2d 304, 309
(S.D.N.Y. 2001).  Thus, the Court must reject a movant "group"
with the largest losses on a determination that it is "simply an
artifice cobbled together by cooperating counsel for the obvious
purpose of creating a large enough grouping of investors to
qualify as 'lead plaintiff,' which can then select the equally
artificial grouping of counsel as 'lead counsel.'"  Id. at 307-
08.

A group consisting of persons that have no pre-
litigation relationship may be acceptable as a lead plaintiff
candidate so long as the group is relatively small and therefore
presumptively cohesive.  See, e.g., Weltz v. Lee, 199 F.R.D. 129,
133 (S.D.N.Y. 2001) (aggregation of seven shareholders did not
present group so cumbersome as to deliver control of litigation
into the hands of the lawyers); In re Oxford Health Plans Inc.,
Sec. Litig., 182 F.R.D. 42, 46 (S.D.N.Y. 1998) ("The Court is
convinced that the limited size of the [plaintiff group] coupled
with the scope of each individuals' loss will make the [plaintiff
group], as reduced by the Court, an effective monitor of its
counsels' performance, thereby fulfilling its purpose under the
PSLRA.").  Allowing a group to serve as lead plaintiff is

appropriate where there is evidence that "unrelated members of a group will be able to function cohesively and to effectively manage the litigation apart from their lawyers." Varghese v. China Shenghuo Pharm. Holdings, Inc., 589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008).

The members of the CSIQ Investor Group were introduced during a conference call prior to seeking appointment as lead plaintiff. They are sophisticated individuals who have demonstrated their intent to participate directly in this litigation and their willingness and ability to serve as class representatives. They have indicated that they have a detailed decision-making structure in place, with established methods for communication amongst themselves and with counsel. (See generally Declaration of Peter E. Borkon, ¶¶ 4, 6-13.) Accordingly, the CSIQ Investor Group satisfies the requirements of the PSLRA.

### 3.   *The CSIQ Investor Group Satisfies the Rule 23 Requirements*

To qualify as the presumptive lead plaintiff the CSIQ Investor Group must also "satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B).

Rule 23(a) provides that one or more members of a class may sue on behalf of the class if:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

At this stage of the litigation, the moving plaintiff must only make a preliminary showing that the adequacy and typicality requirements have been met. Weinberg v. Atlas Air Worldwide Holdings, Inc., 216 F.R.D. 248, 252 (S.D.N.Y. 2003); In re Party City Sec. Litig., 189 F.R.D. 91, 106 (D.N.J. 1999) ("A wide-ranging analysis under Rule 23 is not appropriate [at this initial stage of the litigation] and should be left for consideration of a motion for class certification." (quoting Fischler v. AMSouth Bancorporation, No. 96-1567-Civ-T-17A, 1997 WL 118429, at *2 (M.D. Fla. 1997)) (alteration in original)).

Typicality is established where each class member's claim "arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." In re Drexel Burnham Lambert Group, Inc., 960 F.2d 285, 291 (2d Cir. 1992). However, the claims of the class representative need not be identical those of all members of the class. "[T]he typicality requirement may be satisfied even if there are factual dissimilarities or variations between the

claims of the named plaintiffs and those of other class members, including distinctions in the qualifications of the class members." Bishop v. N.Y. City Dep't of Housing Pres. & Dev., 141 F.R.D. 229, 238 (2d Cir. 1992).

In this case, the CSIQ Investor Group satisfies the typicality requirement because the claims of its members are identical to the claims of the Class members. Specifically, members of the CSIQ Investor Group and all Class members allegedly purchased Canadian Solar securities at artificially inflated prices as a result of Defendants' misrepresentations and omissions, and suffered damages thereby. The CSIQ Investor Group's claims and injuries arise from the same events or course of conduct that gave rise to the claims of other class members.

The adequacy requirement of Rule 23(a) is satisfied if: (1) the plaintiff has interests in common with, and not antagonistic to, the interests of the Class; and (2) the plaintiff's attorneys are qualified, experienced and able to conduct the litigation. See, e.g., In re Flag Telecom Holdings, Ltd. Secs. Litig., 574 F.3d 29, 35 (2d Cir. 2009); Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp., 222 F.3d 52, 60 (2d Cir. 2000); In re Drexel Burnham Lambert Group, Inc., 960 F.2d 285, 291 (2d Cir. 1992).

There is no evidence of antagonism between the interests of the CSIQ Investor Group and those of the proposed Class members, since their claims arise from the same course of conduct. Furthermore, the CSIQ Investor Group has a compelling interest in prosecuting this action based upon its significant financial interest.    In addition, the CSIQ Investor Group has selected counsel that is highly experienced in prosecuting securities class actions such as this one.    For these reasons, the CSIQ Investor Group satisfies the adequacy requirement of Rule 23(a).

### 4.    *Tabak is Appointed Co-Lead Plaintiff*

Although the other movants have failed to establish any respect in which the CSIQ Investor Group's interests are not aligned with the other putative class members, on the possibility that conflicts do ultimately arise, the interests of the class can be protected by the appointment of a co-lead plaintiff.

Tabak has incurred the largest loss of any individual stock purchaser and has standing to pursue claims on behalf of the proposed Class members in this action.    During the Class Period, Tabak incurred substantial losses trading securities of Canadian Solar.

Tabak has timely moved for appointment and satisfies

the typicality requirement of Fed. R. Civ. P. 23(a)(3).  His
claims arise out of the same course of conduct and are based on
the same legal theory of the other members of the class.  See
Robidoux v. Celani, 987 F.2d 931, 936-37 (2d Cir. 1993); In re
Drexel Burnham Lambert, 960 F.2d at 291.

It is appropriate under the circumstances described
above to have a co-lead plaintiff situated in this district.

### 5.  *Selected Counsel Are Approved*

The CSIQ Investor Group has selected Hagens Berman
Sobol Shapiro LLP, a firm with extensive experience litigating
securities class actions.  As demonstrated by the firm's resume,
Hagens Berman has successfully prosecuted numerous securities
fraud class actions on behalf of injured investors.  Hagens
Berman has also demonstrated that it has done considerable work
to identify and investigate potential claims in this Action,
going beyond the public record.  (See Declaration of Reed
Kathrein, ¶¶ 2-3.)

Tabak has selected Berger & Montague, P.C., and Klafter
Olsen & Lesser LLP, to serve as co-lead counsel.  Both firms
possess extensive experience in the area of securities litigation
and have successfully prosecuted numerous securities fraud

actions on behalf of injured investors.

All three firms are qualified to serve as counsel to
the class, Hagens Berman Sobol Shapiro LLP as lead counsel, with
Berger & Montague, P.C., and Klafter Olsen & Lesser LLP as co-
lead counsel.

## IV.  THE MOTION TO TRANSFER IS DENIED

In addition to moving for consolidation and appointment
as lead plaintiff, the CSIQ Investor Group has moved to transfer
the Action to the Northern District of California.  For the
reasons set forth below, the motion to transfer is denied.

### A.    The § 1404 Standard

The statute governing change of venue, 28 U.S.C.
§ 1404(a), provides:  "For the convenience of parties and
witnesses, in the interest of justice, a district court may
transfer any civil action to any other district or division where
it might have been brought."  Section 1404(a) strives to prevent
waste "'of time, energy and money' and to 'protect litigants,
witnesses and the public against unnecessary inconvenience and
expense.'"  Wilshire Credit Corp. v. Barrett Capital Mgmt. Corp.,
976 F. Supp. 174, 180 (W.D.N.Y. 1997) (quoting Continental Grain

Co. v. Barge FBL-585, 364 U.S. 19, 27 (1960)).  "'[M]otions for
transfer lie within the broad discretion of the courts and are
determined upon notions of convenience and fairness on a case-by-
case basis.'"  Linzer v. EMI Blackwood Music Inc., 904 F. Supp.
207, 216 (S.D.N.Y. 1995) (quoting In re Cuyahoga Equip. Corp.,
980 F.2d 110, 117 (2d Cir. 1992)).

        When deciding a motion to transfer, the court must
first determine whether the action "might have been brought" in
the transferee court.  Here, it is not disputed that this Action
might have been brought in the United States District Court for
the Northern District of California.

        Second, the court must determine whether, considering
the "convenience of parties and witnesses" and the "interest of
justice," a transfer is appropriate.  Wilshire, 976 F. Supp. at
180.  To make this determination, courts in the Southern District
of New York consider the following factors:  (1) the convenience
of witnesses; (2) the location of relevant documents and relative
ease of access to sources of proof; (3) the convenience of the
parties; (4) the locus of the operative facts; (5) the
availability of process to compel attendance of unwilling
witnesses; (6) the relative means of the parties; (7) the forum's
familiarity with governing law; (8) the weight accorded to a
plaintiff's choice of forum; and (9) trial efficiency and the

interests of justice.  See Capitol Records, Inc. v. MP3tunes,
LLC, No. 07 Civ. 9931, 2008 WL 4450259, at *5 (S.D.N.Y. Sept. 29,
2008) (citing American Eagle Outfitters, Inc. v. Tala Bros.
Corp., 457 F. Supp. 2d 474, 477 (S.D.N.Y. 2006)).  "The burden of
demonstrating the desirability of transfer lies with the moving
party," who must "make a clear and convincing showing that the
balance of convenience favors [the movant's] choice."  Solar v.
Annetts, 707 F. Supp. 2d 437, 441 (S.D.N.Y. 2010) (citing Orb
Factory, Ltd. v. Design Sci. Toys, Ltd., 6 F. Supp. 2d 203, 208
(S.D.N.Y. 1998)).

### B.    The § 1404 Factors Favor Retaining Jurisdiction

#### 1.    *Convenience of Witnesses*

With respect to potential witnesses in this Action, the
CSIQ Investor Group contends that "the witnesses maintain offices
within the Northern District of California and the SEC
investigation is centered on conduct that occurred within the
Northern District of California."  (CSIQ Investor Group Mem. 10.)
However, the CSIQ Investor Group has failed to provide "an
affidavit containing 'detailed factual statements identifying the
potential principal witnesses expected to be called and a general
statement of the substance of their testimony.'"  American Eagle
Outfitters, 457 F. Supp. 2d at 478.  Accordingly, its assertion

that the Northern District of California is more convenient for
the witnesses is entirely unsubstantiated.

        In its response in support of the motion to transfer,
Canadian Solar argues that any Canadian Solar employees not named
as defendants who might be called as witnesses "predominately
reside either outside the United States or in California."
(Canadian Solar Resp. 3-4.)  While 16 out of 20 Canadian Solar
employees based in the United States reside in California, there
is no indication that any of those employees has any connection
to the gravamen of this action or is a potential witness.
Moreover, although Canadian Solar's only United States office is
in San Ramon, California, its headquarters are located in
Ontario, Canada, which is closer to this district than to the
Northern District of California.

        Given the lack of information regarding specific
witnesses in this Action, this factor is neutral.

### 2. *Location of Relevant Documents and Relative Ease of Access to Sources of Proof*

        In its response in support of the CSIQ Investor Group's
transfer motion, Canadian Solar contends that "the bulk of
potentially relevant documents . . . are located outside the
United States or in California."  (Canadian Solar Resp. 4.)

However, as all movants concede, the location of documents and
relative ease of access to sources of proof is not a significant
factor in the venue analysis, as documents are largely electronic
and can be transported easily and searched from numerous
locations.  See, e.g., TouchTunes Music Corp. v. Rowe Int'l
Corp., 676 F. Supp. 2d 169, 174 (S.D.N.Y. 2009).  As a result,
this factor is also neutral.


### 3.   *Convenience of the Parties*


The CSIQ Investor Group argues that the convenience of
the parties will be better served if the Action is transferred,
because two of the members of the CSIQ Investor Group reside in
the Northern District of California and "[s]everal of the
Defendants, including Arthur Chien and Shawn Qu have regular
contact with that district and maintain offices in San Ramon,
California."  (CSIQ Investor Group Mem. 10.)  However, as
Canadian Solar explained in its response and the Declaration of
Rolland Kwok ("Kwok Decl.") filed in support, Chien and Qu reside
in China and the remaining directors named as Defendants reside
in Canada, the United Kingdom, and Oregon.  (Canadian Solar Resp.
4; Kwok Decl. ¶ 3.)  No officer or director named as a Defendant
resides in California, and the CSIQ Investor Group's statement
that Chien and Qu have regular contact with California is
unsubstantiated.

Moreover, Canadian Solar has appointed an agent to receive service of process with respect to any securities action brought in the Southern District of New York, not in the Northern District of California.  This is consistent with the fact that this district is convenient to Ontario, Canada, where Canadian Solar maintains its executive offices.

Tabak also resides in this district and has chosen this district as the form of the litigation.  All other lead plaintiff movants, aside from the CSIQ Investor Group, also selected this district.

Thus, the convenience of the parties weighs against transfer.

### 4.   *Locus of the Operative Facts*

Notwithstanding its assertion that "the pivotal operative facts took [place] in the Northern District of California," the CSIQ Investor Group acknowledges that "other operative facts may have taken place in Ontario, Canada . . . or in China" and notes that Canadian Solar also has a subsidiary incorporated under Delaware law and held a Board meeting in New York, New York.  (CSIQ Investor Group Mem. 9-10.)  In light of

these facts, it concedes that this factor does not weigh in favor
of any particular venue.  (Id.)  In its response, Canadian Solar
argues that because its only United States office is located in
San Ramon, any operative facts based on its United States
operations "are likely to have taken place in the Northern
District of California."  (Canadian Solar Resp. 4.)  However,
none of the complaints in this Action contain facts establishing
a nexus with the Northern District of California.  The assertion
that the Northern District of California is the locus of
operative facts is unsupported.

        Accordingly, as the CSIQ Investor Group concedes, this
factor is neutral.


              **5.    *Availability of Process to Compel Attendance of
                      Unwilling Witnesses***


        No party points to any specific witnesses to suggest
that trial in New York would impede the attendance of any of
their contemplated witnesses.  Indeed, neither the CSIQ Investor
Group nor Defendants claim that any witnesses would be
unavailable to testify due to location.  Accordingly, this factor
does not weigh in favor of transfer.

### 6.   *Relative Means of the Parties*

Where, as here, proof of a disparity of means is not provided or does not exist, the relative means of the parties "is not a significant factor to be considered." Orb Factory, 6 F. Supp. 2d at 210.  Here, no party has offered substantial evidence that retaining jurisdiction over this action in New York would be unduly burdensome.

### 7.   *Familiarity with Governing Law*

As both this Court and the Northern District of California are familiar with the governing law, this factor is neutral.

### 8.   *Plaintiff's Choice of Forum*

Of the seven related cases filed in this Action, six were filed by plaintiffs in this district, and one was filed in the Northern District of California.  The CSIQ Investor Group appears to have chosen the Northern District of California, but co-lead plaintiff Tabak is located in New York and has selected this district to litigate this Action, as have all other plaintiffs.  Moreover, only two of the seven members of the CSIQ Investor Group reside in California.  (See CSIQ Investor Group

Mem. 10.)  Therefore, this factor weighs slightly in favor of retaining jurisdiction.

### 9.    *Trial Efficiency and the Interests of Justice*

The CSIQ Investor Group argues that trial efficiency and the interests of justice weigh in favor of transfer because Canadian Solar's United States office is located in the Northern District of California and because the caseload in the Southern District of New York exceeds that in the Northern District of California.  While the relative levels of docket congestion in the transferor and transferee district may be considered, they are "insufficient on [their] own to support a transfer motion." In re Connetics, No. 06 Civ. 11496, 2007 WL 1522614, at *9 (S.D.N.Y. May 23, 2007) (quoting In re Nematron Corp. Secs. Litig., 30 F. Supp. 2d 397, 407 (S.D.N.Y. 1998)).  Further, even if courts in this district have heavier caseloads than those in the Northern District of California, there is no evidence that retaining jurisdiction in this district, which is experienced and accustomed to dealing with securities class actions, would result in any inefficiency.

As discussed above, Canadian Solar maintains its executive offices in Ontario, Canada, and has appointed an agent to receive service of process with respect to any securities

action brought in this district.  In addition, co-lead plaintiff
Tabak is located in this district and all of the plaintiffs in
the consolidated actions, other than the CSIQ Investor Group,
opted to litigate in this district.  See TouchTunes, 676 F. Supp.
2d at 173 ("Plaintiff's choice of forum nevertheless should not
be disturbed unless the balance of factors clearly weighs in
favor of a transfer.").

        Accordingly, no trial efficiency will be gained by
transferring this Action to the Northern District of California,
nor do the interests of justice require such a transfer.


**B.    The Motion to Transfer is Denied**


        In light of the foregoing analysis and review of the
relevant factors, the CSIQ Investor Group has not made a clear
and convincing showing that the Action should be transferred to
the Northern District of California.  See Solar, 707 F. Supp. 2d
at 441; Orb Factory, 6 F. Supp. 2d at 208.  The motion to
transfer is therefore denied, and this Court will retain
jurisdiction over the Action.

## V.   CONCLUSION

The motions to consolidate the actions are granted.  The motion of the CSIQ Investor Group to serve as lead plaintiff is granted, Tabak's motion is granted to the extent that he is appointed co-lead plaintiff, and the selection of counsel is approved.  The remaining motions to serve as lead plaintiff are denied and the CSIQ Investor Group's motion to transfer is denied.

It is so ordered.

New York, NY
December 18, 2010

ROBERT W. SWEET
U.S.D.J.