UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

LABIB JANBAY, Individually and on Behalf
of All Others Similarly Situated,

                    Plaintiff,              10 Civ. 4430 (RWS)

     -against-                              OPINION

CANADIAN SOLAR, INC., SHAWN QU and
ARTHUR CHIEN,

                    Defendants.

------------------------------------------X

A P P E A R A N C E S:


          Attorneys for Plaintiffs

          HAGENS BERMAN SOBOL SHAPIRO LLP
          1918 Eighth Avenue, Suite 3300
          Seattle, WA 98101
          By:  Steve W. Berman, Esq.
               Erin K. Flory, Esq.
               Karl P. Barth, Esq.

          One Penn Plaza, 36th Floor
          New York, NY 01119
          By:  Jason A. Zweig, Esq.


          715 Hearst Avenue, Suite 202
          Berkeley, CA 94710
          By:  Reed Kathrein, Esq.


          Attorneys for Defendant

          LATHAM & WATKINS LLP
          885 Third Avenue
          New York, NY 10022

355 South Grand Ave.
Los Angeles, CA 90071

By:  Timothy P. Crudo, Esq.
     David J. Schindler, Esq.
     Terri L. Lilley, Esq.
     Matthew L. Kutcher, Esq.

**Sweet, D.J.**

Defendants Canadian Solar Inc. ("CSI" or the "Company"), Shawn Qu and Arthur Chien (the "Individual Defendants" and, collectively with CSI, the "Defendants") have moved pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(b) to dismiss the Consolidated Complaint for Violation of the Federal Securities Laws (the "Complaint") of Labib Janbay, individually and on behalf of all others similarly situated (the "Plaintiffs").

Based on the conclusions set forth below the motion is granted.

**Prior Proceedings**

On June 3, 2010, a putative class action complaint was filed by Labib Janbay. This followed an announcement that CSI's financial results for 1Q 2010 would be delayed; that it might revise its 4Q 2009 financial statement; that it had received a subpoena from the United States Securities and Exchange

1

Commission ("SEC") seeking information regarding certain sales transactions in 2009; and that its Audit Committee had begun an investigation into the transactions described in the SEC subpoena.

By Opinion of December 18, 2010, motions to consolidate various actions were filed and the motion to appoint lead plaintiff was granted (the "December 18 Opinion").

On March 11, 2011, the Consolidated Complaint was filed alleging remedies under the Securities Exchange Act of 1934 (the "1934 Act"). (Compl. ¶ 1.) The Complaint alleges that CSI was founded in the Province of Ontario, Canada in October 2001, listed on the NASDAQ Exchange in 2006, and operates on three continents, delivering solar modules to customers in twenty-four countries. (Compl. ¶ 2.) As described in the Complaint, CSI is one of the world's largest solar module producers, a vertically-integrated manufacturer of silicon, ingots, wafers, cells, solar modules (panels) and custom-designed solar power applications. (Compl. ¶ 3.) CSI has its principal executive offices in Suzhou, Jiangsu, People's Republic of China; defendant Shawn (Xiaohua) Qu ("Qu") was at all relevant times Chief Executive Officer ("CEO"), President

2

and Chairman of the board of directors of the company; and defendant Arthur Chien ("Chien") was at all relevant times Chief Financial Officer ("CFO") and a member of the board of directors of the Company. (Compl. ¶¶ 19-21).

As a publicly traded company, CSI reported its unaudited quarterly financial results and audited annual financial statements on a regular basis throughout the alleged Class Period. (Compl. ¶¶ 29, 33, 38, 46, 49.) The Complaint further alleges that CSI reported from May 26, 2009 to March 3, 2010 favorable financial reports (Compl. ¶¶ 4-8).

Then it is alleged that on April 20, 2010, at approximately 4:00 p.m., CSI announced that Q1 2010 margins would be lower than previously forecast and its shares declined $3.07 (14.4%) for the day. (Compl. ¶ 9.) On June 1, 2010 CSI reported that it would not be able to file on a timely basis its financial results for the first quarter of 2010; that the Audit Committee of its Board of Directors had opened an investigation; and that the Company had received a subpoena from the SEC relating to, among other things, certain sales transactions in 2009. (Compl. ¶ 10.) According to CSI, it revised its financial results for the fourth fiscal quarter of 2009 ending December

3

31, 2009. (Id.)   CSI's shares dropped in value by 14.25% or $1.69 per share to close on June 2, 2010. (Id.)

The Complaint alleges that during the Class Period, Defendants made false and/or misleading statements, and failed to disclose material adverse information about the Company's business, operations, and prospects with respect to: (1) sales to certain customers, (2) that certain goods were subsequently returned after the end of the quarter, (3) that certain goods failed to satisfy quality control standards and therefore were not certified for sale, (4) that financial results were overstated during the Class Period, and (5) that internal and financial controls were inadequate and public statements and filings related to financial results were false and misleading. (Compl. ¶ 11.)   Plaintiffs allege that CSI's wrongful conduct and omissions and the resulting dramatic decline in the Company's market value caused significant losses to Plaintiffs and the other class members who were all damaged thereby.

The Complaint contains substantive allegations that CSI issued false and misleading Q1 2009 reported financial results (Compl. ¶¶ 29-32), false and misleading representations regarding its systems of internal controls (Compl. ¶¶ 33-36),

4

filed a false and misleading registration statement (Compl. ¶ 37), a false and misleading Q2 2009 reported financial results (Compl. ¶¶ 38-43), a false and misleading prospectus (Compl. ¶¶ 44-45), a false and misleading Q3 2009 financial results (Compl. ¶¶ 46-48), and a false and misleading Q4 2009 financial results (Compl. ¶¶ 49-52).

The Complaint further alleges a scheme to overstate sales revenues and that the Company was forced to admit in August of 2010 that it had improperly recognized $32.8 million in revenues and had improperly failed to recognize another $16.1 million in expenses, including the $5,764,430 sales relationship with a distributor of solar modules that carried out various solar system integration projects throughout the United States. (Compl. ¶¶ 53-67.)

The Complaint then alleges that on June 1, 2010, CSI announced over the PR Newswire that it would delay release of its financial results for the first quarter of 2010 for the period ending March 31, 2010 and that the Audit Committee launched an investigation in response to a subpoena issued by the SEC "requesting documents from the Company relating to, among other things, certain sales transactions in 2009." (Compl.

5

¶ 69.)  Plaintiffs alleges that on August 19, 2010 CSI announced its restated financial results for the fourth quarter of 2009, which included material restatements from the healthy profit of more than $15 million ($0.36 per share) that had been previously reported to an admitted loss of $15.4 million ($0.38 per share), thus confirming the market's reaction to the bad news disclosed on June 1, 2010. (Compl. ¶ 72.)

The Complaint then alleges that CSI issued false and misleading financial statements and statements concerning its system of internal control (Compl. ¶ 73) as a result of recognizing revenue from sham, contingent and uncertain sales (Compl. ¶¶ 73-86).

The Complaint also contains allegations relating to scienter (Compl. ¶¶ 87-92) and loss causation (Compl. ¶¶ 93-100).

It is finally asserted that these allegations establish violations of Section 10(b) of the 1934 Act and Rule 10b-5 thereunder (Compl. ¶¶ 101-06) as well as violations of Section 20 of the 1934 Act against the Individual Defendants (Compl. ¶¶ 107-14).

6

The instant motion was marked fully submitted on July 25, 2011.


## The 9(b) and 12(b) Standard

On a motion to dismiss pursuant to Rule 12(b)(6), all factual allegations in the complaint are accepted as true, and all inferences are drawn in favor of the pleader. Mills v. Polar Molecular Corp., 12 F.3d 1170, 1174 (2d Cir. 1993). "'The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims . . . .'" Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).


To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S.

7

544, 570 (2007)).  Plaintiffs must allege sufficient facts to "nudge[ ] their claims across the line from conceivable to plausible."  Twombly, 550 U.S. at 570.  Though the Court must accept the factual allegations of a complaint as true, it is "'not bound to accept as true a legal conclusion couched as a factual allegation.'"  Iqbal, 129 S. Ct. at 1950 (quoting Twombly, 550 U.S. at 555).


      To state a claim under Section 10(b), plaintiffs must plead that defendants "'(1) made misstatements or omissions of material fact; (2) with scienter; (3) in connection with the purchase or sale of securities; (4) upon which plaintiffs relied; and (5) that plaintiffs' reliance was the proximate cause of their injury.'"  Lentell v. Merrill Lynch & Co., Inc., 396 F.3d 161, 172 (2d Cir. 2005) (quoting In re IBM Sec. Litig., 163 F.3d 102, 106 (2d Cir. 1998)).  Such claims are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) and the PSLRA.  See GE Investors v. General Elec. Co., 447 F. App'x 229, 230 (2d Cir. 2011).  Rule 9(b) requires that averments of fraud be "state[d] with particularity."  Fed.R.Civ.P. 9(b); see also ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 99 (2d Cir. 2007).  To satisfy this requirement, a plaintiff must: "(1) specify the statements that

the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Rombach v. Chang, 355 F.3d 164, 170 (2d Cir. 2004) (internal quotation marks and citation omitted). General, conclusory, or speculative allegations, unsupported by specific facts, are legally insufficient. Id. at 176.

In Rule 10b-5 actions, scienter requires a showing of "intent to deceive, manipulate, or defraud," Ernst & Ernst v. Hochfelder, 425 U.S. 185, 194 n.12 (1976), or reckless conduct, In re Carter-Wallace, Inc. Sec. Litig., 220 F.3d 36, 39-40 (2d Cir. 2000). In this regard,

> private securities fraud actions must also meet the PSLRA's pleading requirements or face dismissal. See 15 U.S.C. § 78u-4(b)(3)(A). In pleading scienter in an action for money damages requiring proof of a particular state of mind, "the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." Id. § 78u-4(b)(2). The plaintiff may satisfy this requirement by alleging facts (1) showing that the defendants had both motive and opportunity to commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness. Ganino v. Citizens Utilities Co., 228 F.3d 154, 168-69 (2d Cir. 2000).

ATSI Commc'ns, Inc., 493 F.3d at 99.


**The Consolidated Complaint Fails To Plead A Material False
Statement**


The Complaint fails to allege that statements
regarding CSI's pre-September 30, 2009 financial performance
were false.  The Complaint alleges that a number of Defendants'
statements regarding CSI's financial performance were false and
misleading because CSI improperly recognized and reported
revenue from sham sales transactions.  The Complaint, however,
identifies only a single sales transaction, which did not
purportedly take place until September 30, 2009.  (Compl. ¶ 60.)
The Complaint's failure to allege any facts about any
transactions prior to September 30, 2009 renders its claims as
to statements regarding CSI's financials prior to that date
legally insufficient.


Under Rule 9(b), Plaintiffs must plead specific facts
explaining why each alleged misstatement was false at the time
it was made.  Rombach, 355 F.3d at 170; San Leandro Emergency
Med. Group Profit Sharing Plan v. Philip Morris Cos., Inc., 75
F.3d 801, 812-13 (2d Cir. 1996) (finding no inference of fraud

10

where plaintiff failed to articulate contemporaneous facts that were inconsistent with defendants' public statements). Where sham transactions are alleged, specific facts about each one of these transactions are required. See Decker v. Massey-Ferguson, Ltd., 681 F.2d 111, 116 (2d Cir. 1982) (rejecting fraud theory based on inadequate write downs of obsolete facilities where the plaintiff failed to identify the facilities, their recorded value, or the values that should have been recorded); Caiafa v. Sea Containers Ltd., 525 F. Supp. 2d 398, 411 & n.10 (S.D.N.Y. 2007) (finding plaintiffs' allegations inadequate for failing to identify amounts that challenged financial reports were overvalued, basis for valuation, and in what periods); Gavish v. Revlon, Inc., No. 00 Civ. 7291, 2004 WL 2210269, at *13 (S.D.N.Y. Sept. 30, 2004) ("plaintiffs must provide at the very least some level of detail about the improper accounting alleged to underlie misleading statements" such as "the date of the transaction at issue, the amount of the allegedly overstated revenue . . . and a basis for believing the accounting may have been fraudulent" (quotation and citation omitted)).

The sales transaction specifically identified in the Complaint is a shipment of solar modules purportedly sold to Sunvalley on September 30, 2009 and recorded in 3Q 2009.

11

(Compl. ¶¶ 60-62.)   A September 30, 2009 transaction, however recognized, cannot render false any statement regarding CSI's financial performance prior to that date.   See, e.g., San Leandro, 75 F.3d at 812-13 (holding plaintiffs did not sufficiently demonstrate falsity of representation by relying on disclosure that occurred three weeks after representation was made).   Thus, given the Complaint's failure to identify an improper sales transaction prior to September 30, 2009, Plaintiffs' claims relating to statements touching on CSI's financial condition prior to that date are dismissed.


**The Complaint Fails To Allege The Material Falsity Of CSI's 3Q 2009 Results**

Plaintiffs allege that statements discussing CSI's 3Q 2009 results were false because CSI recognized revenue in 3Q 2009 from the September 30, 2009 Sunvalley transaction, which Plaintiffs contend was not a sale but a consignment.[1]   (Compl. ¶¶ 60-61.)

---

[1]   The Complaint also challenges (1) an October 13, 2009 press release (Compl. ¶ 41); (2) an October 15, 2009 prospectus (Compl. ¶ 44); (3) a November 17, 2009 press release (Compl. ¶ 46); (4) a November 18, 2009 Form 6-K attaching CSI's November 17, 2009 press release (Compl. ¶ 47); and (5) a February 19, 2010 press release (Compl. ¶ 48). Plaintiffs allege that Defendants' description of CSI's revenue recognition policy in an October 14, 2009 Form 6-K was false when made. (Compl. ¶ 43.)

The Complaint asserts that revenue from the September 30, 2009 Sunvalley transaction was incorrectly recognized in 3Q 2009 because "the sales were not final," but it supplies no specific facts to support that assertion. (Compl. ¶¶ 60, 62.) Speculative and conclusory pleading is legally insufficient. Decker, 681 F.2d at 114; Rombach, 355 F.3d at 176. Allegations contained in the complaint of an unrelated matter, the Sunvalley Complaint pointed to by Plaintiffs (Compl. ¶¶ 58-59), cannot establish the particularized facts necessary to support this securities fraud claim. Caiafa, 525 F. Supp. 2d at 411 (dismissing Section 10(b) claim and holding that "allegations about [defendant] contained in pleadings from an unrelated lawsuit [] are inadmissible"). Additionally, the Sunvalley Complaint's assertion that CSI began shipping unordered product to Sunvalley "in early 2009" does not establish the timing and manner in which CSI recognized revenue for the September 30, 2009 transaction and it is vague and unparticularized. Decker, 681 F.2d at 115-16; Gavish, 2004 WL 2210269, at *18 (dismissing as "unspecific, innocuous, or both" the allegation that "at some unspecified time (but prior to 'later in 1998') Revlon shipped 'many shipments' to Safeway that Safeway had not ordered").

13

The alleged sales meetings and emails from November and December 2009 do not render CSI's statements concerning the Company's 3Q 2009 financial results false or misleading. (Compl. ¶¶ 63-65.)   The Plaintiffs quote and characterize these internal discussions without alleging any identifying information about their apparent source, rendering these allegations unreliable and do not allege any actual statements or specific facts demonstrating that the Sunvalley Sale was a consignment.   The actual quoted statements reflect CSI's efforts to help move product purchased by a distributor who was subsequently in "serious default." (Compl. ¶ 57.)   The elements of fraud on the part of Defendants are not alleged. Decker, 681 F.2d at 116; Gavish, 2004 WL 2210269, at *13; Caiafa, 525 F. Supp. 2d at 411 & n.10.

No facts are alleged to place the purported value of the Sunvalley Sale within the context of CSI's total financial picture.   The Complaint fails to plead that the September 30, 2009 Sunvalley transaction was material with the specificity required by Rule 9(b) and the PSLRA. Gavish, 2004 WL 2210269, at *2-*4, *16 (dismissing complaint alleging improper revenue recognition where plaintiff failed "to even attempt to approximate the magnitude or degree of [the alleged]

14

misstatements in relation to Revlon's total financial picture");

In re Nokia OYJ (Nokia Corp.) Sec. Litig., 423 F. Supp. 2d 364,

408 (S.D.N.Y. 2006)(finding that the complaint "fails, and does

not even attempt, to approximate the magnitude or degree of the

alleged misstatements in relation to Nokia's total financial

picture, a company with net sales over $37 billion. Such

'conclusory allegations of materiality cannot withstand a motion

to dismiss.'" (citation omitted)).  The Sunvalley Sale amounted

to no more than $5,764,430 in revenue, which represented only

2.7% of CSI's total 3Q 2009 revenue and 0.9% of the Company's

total 2009 revenue. (Compl. ¶ 61; Kutcher Decl. (Dkt. No. 69)

Ex. 5 at 6, Ex. 8 at 6.)  There is not a "substantial likelihood

that the disclosure" of the transaction "could have been viewed

by the reasonable investor as having significantly altered the

'total mix' of information available." Masters v.

GlaxoSmithKline, 271 Fed. App'x 46, 50-51 (2d Cir. 2008)

(citation and quotation marks ommitted) (holding that potential

loss of 3% of revenue concealed by alleged misstatements was

immaterial); see also ECA & Local 134 IBEW Joint Pension Trust

of Chicago v. JP Morgan Chase Co., 553 F.3d 187, 204 (2d Cir.

2009) (noting preliminary materiality threshold of 5%); Acito v.

IMCERA Group, Inc., 47 F.3d 47, 51-52 (2d Cir. 1995) (finding

that concealment of information that affected "less than 1% of

15

IMCERA's total sales" was immaterial as a matter of law); In re
Duke Energy Corp. Sec. Litig., 282 F. Supp. 2d 158, 161-62
(S.D.N.Y. 2003), aff'd, 113 Fed. App'x 427 (2d Cir. 2004)
(concluding that tiny inflation of revenue relative to company's
overall operations was immaterial as a matter of law even
assuming that the accounting practices at issue were "arguably
illegal").

        The Plaintiffs have asserted that the allegations are
based on interviews with former CSI employees with personal
knowledge of the Sunvalley transaction.   However, particular
facts that establish the basis of the witnesses' knowledge and
reliability are required.  Novak v. Kasaks, 216 F.3d 300, 314
(2d Cir. 2000) (confidential sources, though they need not be
named, must be "described in the complaint with sufficient
particularity to support the probability that a person in the
position occupied by the source would possess the information
alleged").   The allegations suggest that the confidential
witness ("CW") got the information "through intermediaries, thus
undermining the likelihood that he had personal knowledge of his
allegations." Glaser v. The9, Ltd., 772 F. Supp. 2d 573, 595
(S.D.N.Y. 2011); see also Campo v. Sears Holdings Corp., 371
Fed. App'x 212, 217 (2d Cir. 2010) (discounting allegations

16

based on CW who lacked personal knowledge of defendants' access to information about specifically alleged fraud). Moreover, no one at the sales meetings is alleged to have been involved in or to have first hand knowledge of the Sunvalley Sale's negotiation or the original terms of the sale.

The Sunvalley Complaint does not identify any specific transaction and contains no inference that Sunvalley, CSI's customer, knew when or how CSI accounted for its sales. Plaintiffs principally cite Johns v. Bayer Corp., No. 09 Civ. 1935, 2010 U.S. Dist. LEXIS 62804 (S.D. Cal. June 24, 2010), for the proposition that they may rely on the Sunvalley Complaint because they independently investigated the circumstances of the Sunvalley transaction. However, the court in Johns allowed the plaintiff to draw on the allegations of another complaint only where the plaintiff "provide[d] citations to the sources of Plaintiffs' information" gathered as part of its investigation and contacted the attorneys who filed the other complaint. Id. at *5-*6. Plaintiffs here neither identify the sources they consulted as part of their investigation nor allege that they contacted the attorneys who filed the Sunvalley Complaint.

17

The Plaintiffs have asserted that revenue from the Sunvalley Sale was qualitatively material to CSI's financial statements.   Plaintiffs' principal "qualitative" factor, a single statement that CSI considered the U.S. market to be important, does not establish materiality.   Only 5.9% of CSI's FY 2009 revenue was generated by its sales in America (which included Canada).   Thus, the $5.76 million Sunvalley Sale, which constituted only 0.9% of CSI's 2009 revenue and 2.7% of its 3Q09 sales, is immaterial as a matter of law.   Plaintiffs' have relied on Litwin v. Blackstone Group, L.P., 634 F.3d 706 (2d Cir. 2011) to argue that the Sunvalley Sale is material despite its size.   In Litwin, the Second Circuit found that Blackstone Group's "Corporate Private Equity" fund was its "flagship segment" and was "'among the largest [funds] . . . ever raised'" by the company, a "long-term" leader in private equity funds. Id. at 720.   Thus, omissions related to that fund could be material at a lower total-dollar threshold.   Id.   Here, CSI's U.S. sales involved the Company's least significant and least productive geographic segment.   Dismissal is thus appropriate even under Litwin.

Finally, Plaintiffs' argument that "intentional misconduct or an unlawful transaction" may transform an

18

"otherwise immaterial transaction to be material" does not save Plaintiffs' claim from dismissal.   In an analogous case, the Second Circuit affirmed a decision that directly addressed and rejected that same argument.   In re Duke Energy Corp. Sec. Litig., 282 F. Supp. 2d 158, 161-62 (S.D.N.Y. 2003) ("The same is also true of plaintiffs' final argument, that the nondisclosure was qualitatively material because what was concealed was "illegal" activity. . . . But even assuming they were, illegality of a financial nature (as opposed, say, to rape or murder) must still be assessed, for disclosure purposes, by its economic impact. Otherwise, every time a giant corporation failed to disclose a petty theft in its mailroom, it would be liable under the securities laws."), aff'd, 113 Fed. App'x 427 (2d Cir. 2004).   Plaintiffs have not adequately pled that the recognition of revenue from the Sunvalley Sale was the result of intentional misconduct or was otherwise unlawful.


**The Complaint Fails to Allege that Defendants' Statements Regarding Internal And Disclosure Controls Were False**

Plaintiffs allege that CSI's June 8, 2009 annual report for FY 2008 falsely stated that CSI "maintained, in all material respects, effective internal control over financial reporting as of December 31, 2008."   (Compl. ¶¶ 35, 37, 44.)

19

According to the Complaint, this statement was false or misleading because CSI's "system of accounting internal controls was materially flawed, as it would be forced to disclose on August 19, 2010" when it revised its unaudited financials for 4Q 2009. (Compl. ¶ 36.)

CSI's August 19, 2010 press release explained the basis for each adjustment and did not refer to sham sales generally or the September 30, 2009 Sunvalley Sale in particular. (Kutcher Decl. Ex. 8 at 5-6.)  The disclosure also noted that CSI's Audit Committee conducted an investigation into certain transactions entered into by CSI in 2009 and determined that CSI had accounted for those transactions properly.  (Id.) Thus, even though the reported financial results contained in the March 3, 2010 press release and March 5, 2010 Form 6-K were later adjusted, their revision does not support the existence of a fraudulent scheme or the falsity of any other statements.  See Fishbaum v. Liz Claiborne, Inc., 189 F.3d 460, 1999 WL 568023, at *3 (2d Cir. 1999); Coronel v. Quanta Capital Holdings, Ltd., No. 07 Civ. 01405, 2009 WL 174656, at *15 (S.D.N.Y. Jan. 26, 2009).  For example, the revisions to the March 3 and March 5, 2010 disclosures announcing CSI's 3Q 2009 results do not establish the falsity of the April 20, 2010 press release

20

announcing lower than expected 1Q 2010 margins.  (Compl. ¶ 52.)
Plaintiffs allege that Defendants' explanation for the decreased
margins was false because it failed to note that the "declining
margins were . . . attributable to improper revenue recognition
in the fourth quarter of 2009, as the Company would be forced to
admit at a later date."  (Id.)  That CSI revised its 4Q 2009
financials, however, did not render the April 20 statements
false.  Lacking from the Complaint are any specific facts about
how the revisions actually affected CSI's estimated 1Q 2010
margins.  Plaintiffs' conclusory statement is insufficient to
plead falsity.  Decker, 681 F.2d at 116; Gavish, 2004 WL
2210269, at *13.


        That CSI revised some of its reported financial
results for 4Q 2009 on August 19, 2010, does not render false
the Company's statement about its internal controls as of
December 31, 2008, which statement was made more than a year
earlier on June 8, 2009.  San Leandro, 75 F.3d at 812 (holding
that the disclosure of negative information after a positive
statement does not alone establish a finding that the earlier
statement was false or misleading when made); SRM Global Fund
L.P. v. Countrywide Fin. Corp., No. 09 Civ. 5064, 2010 WL
2473595, at *10 (S.D.N.Y. Jun. 17, 2010) (same); Elliott

21

Assocs., L.P. v. Covance, Inc., No. 00 Civ. 4115, 2000 WL
1752848, at *7 (S.D.N.Y. Nov. 28, 2000) (same).   The Complaint
contains no facts explaining how the revisions to the 4Q 2009
financials revealed that CSI's internal controls were not
effective during any earlier period of time, and the Complaint
alleges no other facts to support the assertion that CSI's
internal controls were deficient.

        Plaintiffs have failed to allege specific facts
concerning the purportedly deficient internal controls,
including how they were deficient, when and why.   Decker, 681
F.2d at 116; Gavish, 2004 WL 2210269, at *13; Teamsters Local
617 Pension and Welfare Funds v. Apollo Group, Inc., No. CIV 06-
02674, 2011 WL 1253250, at *27 (D. Ariz. Mar. 31, 2011) (finding
that falsity not pled where restatement identified in complaint
was not linked to alleged fraud).

        The Complaint alleges that certain interim quarterly
statements were false because CSI did not simultaneously reveal
that its "internal and disclosure controls with respect to its
revenue recognition policy were materially deficient." (Compl. ¶
38.)   The Complaint does not allege any facts explaining why or
how CSI's internal controls were materially deficient at the

                            22

time CSI made any of the challenged statements. Instead, Plaintiffs rely solely on general assertions regarding the existence of deficient controls (Compl. ¶¶ 38, 46), which fall far short of satisfying the exacting pleading requirements of Rule 9(b) and the PSLRA. Rombach, 355 F.3d at 170, 176; Decker, 681 F.2d at 114. That CSI revised some of its 4Q 2009 financial data in August 2010, does not establish that CSI's internal controls were materially deficient in prior quarters, especially when no adjustments were made to those quarters. San Leandro, 75 F.3d at 812; SRM Global Fund L.P., 2010 WL 2473595, at *10.

Plaintiffs attempt to distinguish Fishbaum v. Liz Claiborne, Inc., 189 F.3d 460, and Coronel v. Quanta Capital Holdings, Ltd., 2009 WL 174656, on the basis that neither involved a "restatement." The presence or lack of a restatement is irrelevant to the rule supported by Fishbaum and Coronel that revisions to financial statements in one quarter do not alone demonstrate fraud or falsity of statements in other periods. See, e.g., Teamsters Local 617 Pension & Welfare Funds, 2011 WL 1253250, at *23, *27 (restatement insufficient to plead falsity where complaint lacked particularized facts drawing "'a specific nexus'" between the restatement and any alleged misstatements (citation omitted)).

Plaintiffs argue that Defendants do not openly dispute that Plaintiffs plead that the Company's public assurances of the adequacy of its internal controls were materially false, at least as to Q4.  However, Plaintiffs do not allege that CSI made any statement about the adequacy of its controls in 4Q09 nor is there an allegation concerning "why and how" CSI's internal and disclosure controls purportedly failed.  See Rombach, 355 F.3d at 174 ("plaintiffs must do more than say that the statements in the press releases were false and misleading; they must demonstrate with specificity why and how that is so."); Gavish, 2004 WL 2210269, at *13.  Plaintiffs' allegations concerning internal and disclosure controls are insufficient.

**The Complaint Fails To Plead Scienter Adequately**

The PSLRA requires the pleading of particularized facts that give rise to a strong inference that each defendant made each challenged statement with scienter.  Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322-23 (2007).  In this context, a "strong inference" means one so "cogent" and "compelling" that "a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing

24

inference one could draw from the facts alleged." Id. at 323-24; Ernst & Ernst v. Hochfelder, 425 U.S. at 193 n.12.   To overcome this hurdle Plaintiffs must either "(1) demonstrate that defendants had both motive and opportunity to commit fraud, or (2) allege facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." Campo v. Sears Holdings Corp., 635 F. Supp. 2d 323, 332-33 (S.D.N.Y. 2009) (quotation marks and citation omitted), aff'd, 371 Fed. App'x 212 (2d Cir. 2010); see also Rombach, 355 F.3d at 176. Plaintiffs incorrectly suggest they may raise an inference of scienter by pointing to "the size and nature" of CSI's adjustment to its 4Q 2009 unaudited financials. (Compl. ¶ 91.) "[I]t is well established that the size of the fraud alone does not create an inference of scienter." In re PXRE Group, Ltd. Sec. Litig., 600 F. Supp. 2d 510, 545 (S.D.N.Y. 2009) (quotations marks and citation omitted), aff'd sub nom. Condra v. PXRE Group Ltd., 357 Fed. App'x 393 (2d Cir. 2009); see also Defer LP v. Raymond James Fin., Inc., 654 F. Supp. 2d 204, 219 (S.D.N.Y. 2009) ("alleging a large fraud on its own does not carry plaintiff's burden to allege scienter with particularity").   The magnitude of the revision is not indicative of scienter where, as here, Plaintiffs have failed to

25

show "that the [revisions were] the product of fraudulent intent." Caiafa, 525 F. Supp. 2d at 414.

Plaintiffs do not plead motive, which requires them to allege "a concrete and personal benefit to the individual defendants resulting from the fraud." Kalnit v. Eichler, 264 F.3d 131, 139 (2d Cir. 2001) (citation omitted). The Complaint does not allege that anyone at CSI, including the Individual Defendants, made any stock sales, let alone any suspicious sales, during the purported Class Period.

The only suggestion of a motive to commit fraud in the Complaint is the assertion that Defendants wanted to complete a secondary public offering on October 22, 2009. (Compl. ¶¶ 44-45, 88.) The Second Circuit has specifically held that efforts to complete a secondary public offering "are part of the officers' and directors' financial responsibilities to the Company" and, absent factors not alleged here, "do[] not entail concrete benefits sufficient to demonstrate motive." Rombach, 355 F.3d at 177 (quotation marks and citation omitted). "General allegations are insufficient to establish motive under § 10(b)." In re Bristol-Myers Squibb Sec. Litig., 312 F. Supp. 2d 549, 561 (S.D.N.Y. 2004).

26

Where a complaint fails to allege motive, "the strength of the circumstantial allegations" of conscious misbehavior or recklessness "must be correspondingly greater." Campo v. Sears Holdings Corp., 371 Fed. App'x 212, 216 (2d Cir. 2010) (quotation marks and citation omitted); Fort Worth Employers' Ret. Fund v. Biovail Corp., 615 F. Supp. 2d 218, 225-26 (S.D.N.Y. 2009). Because the Complaint does not adequately plead motive, it must allege a degree of scienter "approaching a knowledgeable participation in the fraud or a deliberate and conscious disregard of facts" and "must detail specific contemporaneous data or information known to the defendants that was inconsistent with the representation in question." Hart v. Internet Wire, Inc., 145 F. Supp. 2d 360, 367, 368 (S.D.N.Y. 2001), aff'd, 50 Fed. App'x 464, 466 (2d Cir. 2002) (citation omitted).

The Complaint relies on two sources of information in the effort to raise an inference of scienter:  purported statements made at two U.S. sales meetings on November 11 and 23, 2009; and a series of e-mails purportedly exchanged between November 12, 2009 and March 11, 2010.  (Compl. ¶¶ 63-65, 67.) These alleged communications do not identify any act done by, or

27

fact known to, anyone at CSI earlier than November 11, 2009. Consequently, the Complaint fails to allege scienter with respect to all statements prior to November 11, 2009.


The Complaint ties none of the scienter allegations to any Individual Defendant. See City of Brockton Ret. Sys. v. Shaw Group Inc., 540 F. Supp. 2d 464, 472-74 (S.D.N.Y. 2008) (no inference of scienter where Plaintiffs failed to allege individual defendants were provided with contradictory information). The only allegation in this regard that even mentions an Individual Defendant is a purported statement by Beverly Zhou at a November 11, 2009 U.S. sales meeting that Qu "regretted parking inventory with Sunvalley and would not do so again in the future." (Compl. ¶ 89.) There are no facts alleged concerning "what kind of access [Zhou] had to [Qu], in what form and context [Qu] made his alleged statement, or how [Zhou] was privy to that statement." Glaser, 772 F. Supp. 2d at 595. Without those details, Zhou's alleged statement does not support an inference of scienter. Id.; In re Elan Corp. Sec. Litig., 543 F. Supp. 2d 187, 207, 220 (S.D.N.Y. 2008). Indeed, her statement is "particularly uninformative because [it] . . . purport[s] to read [Qu's] mind." Glaser, 772 F. Supp. 2d at 595. Accordingly, the Complaint fails for lack of pleading

28

information known or available to the Individual Defendants that could raise a strong inference of scienter. Kalnit, 264 F.3d at 142.

The sources of allegations regarding the sales meetings, emails and the September 30, 2009 sale to Sunvalley are neither transparent nor disclosed. When the source of information in a complaint is not transparent, the information provided may be relied upon only if there are sufficient facts to "support the probability that a person in the position occupied by the source would possess the information alleged." Novak, 216 F.3d at 314; In re Flag Telecom Holdings, Ltd. Sec. Litig., 308 F. Supp. 2d 249, 262 (S.D.N.Y. 2004) (discounting scienter allegations on this basis). The failure to identify any information about the source not only "frustrates the [Tellabs] requirement" "that a court weigh competing inferences to determine whether a complaint gives rise to an inference of scienter that is "cogent and at least as compelling as any opposing inference of nonfraudulent intent" such that it renders an inference of scienter based on the alleged internal discussions insufficient. Campo, 371 Fed. App'x at 216 n.4 (quotation marks and citations omitted); see also Tellabs, 551

29

U.S. at 326 ("We agree that omissions and ambiguities count against inferring scienter[.]").

The allegations based on the Sunvalley Complaint do not establish personal knowledge of improper accounting by CSI and there is an admission that at the time it was purchasing product from CSI it was unaware of any fraudulent scheme. (Kutcher Decl. Ex. 2 at ¶¶ 23, 26.)

When evaluating scienter allegations, the Court must weigh the allegations in the Complaint, documents incorporated by reference, and matters subject to judicial notice, and it must weigh any culpable inference against non-culpable ones. Tellabs, 551 U.S. at 323-24.

While Plaintiffs try to generate a culpable inference by the used sources and the third-party complaint, the Complaint itself provides for a non-culpable inference:  that CSI sold product to Sunvalley, but when Sunvalley defaulted, CSI's sales team worked to move the product to another customer.  That non-fraudulent inference is supported by the following:

- In November 2009, several months after the product was shipped to Sunvalley, CSI learned

30

that Sinosure (a Chinese export credit insurer)
had cancelled Sunvalley's policy due to its
"serious default" (Compl. ¶ 57).    In response,
CSI made efforts both to collect from Sunvalley
and to divert product in Sunvalley's custody to
other customers who could pay. (See e.g., Compl.
¶¶ 63-65, 67.)

- During CSI's effort to move the product in
  Sunvalley's inventory, members of CSI's
  accounting department in China made inquiries
  concerning the details of these transactions in
  order to account for them properly. (Compl. ¶
  65.)

- Having entered "serious default," Sunvalley
  eventually filed a breach of contract lawsuit
  against CSI, in which Sunvalley asserted it had
  been given a right to return unsold inventory.
  (Compl. ¶¶ 54-55, 58-59.)

- CSI sold product to Sunvalley during 2009, and
  those sales were properly accounted for as
  demonstrated by Deloitte's unqualified audit
  opinion and the Audit Committee's determination
  that the transactions described in the SEC
  subpoena had been accounted for properly.
  (Kutcher Decl. Ex. 4 at 92; Ex. 8 at 6.)

**The Sunvalley Transaction Does Not Support An Inference of Scienter**

Plaintiffs have contended that the Sunvalley Sale was
intended to increase reported earnings to inflate the share
price of the October 22, 2009 offering.    That contention is not
alleged in the Complaint, and Plaintiffs' Opposition cannot
amend the Complaint.    Wright v. Ernst & Young LLP, 152 F.3d 169,

178 (2d Cir. 1998). Even if alleged, this theory would not establish motive because the 3Q09 earnings were not released until November 17, 2009, nearly a month after the offering was completed. Thus, the 3Q09 earnings cannot have affected the offering price. (Compl. ¶¶ 45-46.) In addition, the Complaint does not identify any concrete benefit to the Individual Defendants from the secondary offering. Plaintiffs rely on In re Am. Bank Note Holographics, Inc. Sec. Litig., but in that case the motive allegations were inadequate because, as in this case, the complaint had not pled how the individuals benefited from a higher offering price. 93 F. Supp. 2d 424, 445-46 (S.D.N.Y. 2000).

The Complaint's other allegations regarding the Sunvalley Sale fail to establish a strong inference of scienter. Effectively admitting failure to plead motive, Plaintiffs note that "absence of motive allegations is not dispositive of scienter." (Pls. Mem. at 12 n.8). "Where motive is not apparent, it is still possible to plead scienter by identifying circumstances indicating conscious behavior, though the strength of the circumstantial allegations must be correspondingly greater." Kalnit, 264 F.3d at 142 (citation omitted). The Complaint does not allege that the Individual Defendants knew

32

information about the Sunvalley Sale that would render their statements false. Such allegations are essential to establish scienter here. See Campo, 371 Fed. App'x at 216 (finding allegations that "relied heavily" on the personal knowledge of confidential witnesses was inefficient where the complaint did not specify contrary data individual defendants had access to); Teamsters Local 445 Freight Div. Pension Fund v. Dynex Cap. Inc., 531 F.3d 190, 196 (2d Cir. 2008) (finding no scienter where plaintiffs did not identify specific reports or statements with contrary facts); In re eSpeed, Inc. Sec. Litig., 457 F. Supp. 2d 266, 292 (S.D.N.Y. 2006) (failure to identify access to contrary information "fatal to a plaintiff's effort to plead scienter based on conscious misbehavior or recklessness").

The Plaintiffs have contended that Qu was aware that the Sunvalley Sale was an improper "parking" arrangement. They admit, however, that this allegation, which does not explain how or when Qu learned of the information, is based upon a CW who allegedly heard yet another person (Beverly Zhou) claim to read Qu's mind. (Pls. Mem. at 9; Compl. ¶ 63.) Plaintiffs assert that the involvement of CSI's Vice President of Global Sales in the alleged impropriety "implies the CEO and CFO's scienter." (Pls. Mem. at 16.) This proposition, for which Plaintiffs cite

33

no authority, is contrary to Second Circuit law.  See, e.g., In re PXRE Group, Ltd., Sec. Litig., 600 F. Supp. 2d at 538 (rejecting allegations that defendants "must have known" information known to another executive due to their positions). The Complaint fails to describe the CW in any way, and Second Circuit law requires the Court to discount allegations based upon such inadequately described CWs.  See, e.g., Novak, 216 F.3d at 314; Glaser, 772 F. Supp. 2d at 595 (finding that allegations based on a confidential witness could not be credited because there was no indication what aspect of management the CW was in, his job duties, and what access he had to the individual defendant); Feasby v. Industri-Matematik Int'l Corp., No. 99 Civ. 8761, 2003 WL 22976327, at *4 (S.D.N.Y. Dec. 19, 2003) (discounting scienter allegations of former employee and consultant sources because "nowhere [] does the Complaint describe the position held by or work assignments of the former employee[s] . . . or any other information that would support an inference that the sources would possess the information attributed to them").  Moreover, the Complaint fails to allege any facts from which the Court may infer that either the CW or Zhou had any basis to know Qu's state of mind.  Plaintiffs' theory of corporate scienter, which hinges upon allegations of Yan Zhuang's misconduct, is likewise based on an unidentified CW

34

and on the unconfirmed claims of the Sunvalley Complaint. As explained above, these allegations are insufficient to establish scienter, even for an entity. See In re PXRE, 600 F. Supp. 2d at 529 n.22 (refusing to find scienter against the company where plaintiff did not adequately allege a non-defendant executive's motive to defraud or conscious misbehavior or recklessness).

Plaintiffs also have contended that a "simple GAAP violation" such as the premature recognition of revenue is indicative of scienter. Setting aside that no well-pled fact demonstrates premature revenue recognition, GAAP errors alone do not establish scienter. See ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co., 553 F.3d 187, 200 (2d Cir. 2009) ("[A]llegations of GAAP violations or accounting irregularities, standing alone, are insufficient to state a securities fraud claim.") (citation and quotation marks omitted); City of Brockton, 540 F. Supp. 2d at 473 (same).

The Plaintiffs have relied on the fact that CSI revised its 4Q09 income and profits, but a correction of financial statements standing alone does not raise an inference of scienter. City of Brockton, 540 F. Supp. 2d at 472 ("well settled that mere fact of a restatement . . . does not support a

35

strong, or even weak inference of scienter." (citation omitted)). Plaintiffs' authorities do not dictate a different conclusion. In In re Scholastic Corp. Sec. Litig., the court found scienter adequately pled because, in addition to the revised financials, the complaint detailed "what defendants knew on a daily, weekly and monthly basis" and alleged that the defendants made public statements inconsistent with that knowledge. 252 F.3d 63, 76-77 (2d Cir. 2001). Plaintiffs' Complaint contains no such details.

Plaintiffs have not pointed to a single improper 4Q09 transaction, and they do not contend that the 3Q09 Sunvalley Sale, the only transaction the Complaint identifies as improper, had any connection to CSI's 4Q09 revision. They do not dispute CSI's stated (and ostensibly benign) reasons for that revision.

The Sunvalley Sale was allegedly recognized in 3Q09 (the financials for which period were not revised), and the Plaintiffs offer no facts to establish scienter for the 4Q09 revision. Unlike in Plaintiffs' cases, there is no nexus between the 4Q09 revision (the only allegedly false statement) and the Sunvalley Sale (the only allegedly wrongful transaction). Cf. In re Scholastic Corp. Sec. Litig., 252 F.3d

36

at 77; Rothman v. Gregor, 220 F.3d 81, 90-91 (2d Cir. 2000)
(finding write-off was related to alleged impropriety).

## The Complaint Fails To Adequately Plead Loss Causation

The Complaint fails to plead loss causation, "the
causal link between the alleged misconduct and the economic harm
ultimately suffered by the plaintiff." Lentell, 396 F.3d at 172
(citation and quotation marks omitted). The Plaintiffs are
required to allege facts sufficient to show that the "relevant
truth" that had been concealed by Defendants' purportedly false
statements was disclosed to the market, which in turn caused
CSI's stock price to decline. Dura Pharms., Inc. v. Broudo, 544
U.S. 336, 342-43, 347 (2005). An alleged corrective disclosure
that does not reveal the falsity of Defendants' challenged
public statements cannot establish loss causation, a pleading
failure that "is fatal under Second Circuit precedent."
Lentell, 396 F.3d at 175.

The Plaintiffs have alleged that the truth about CSI's
supposed sham sales transactions and resulting false financial
results "was revealed to the market through several partial
disclosures" beginning on February 19, 2010 and continuing

37

through June 1, 2010.   (Compl. ¶¶ 95, 97-99.)   However, the partial disclosures identified by Plaintiffs do not reveal the sham sales upon which Plaintiffs base their fraud claim.

Plaintiffs allege that on February 19, 2010 and April 20, 2010, CSI issued press releases announcing that its margins would be lower than previously projected, led to declines in CSI's stock price.   (Compl. ¶¶ 97, 98.)   These two disclosures are about revised future projections rather than about past financial results.   As Plaintiffs concede, the February 19 announcement clearly noted that the announced reduction in projected margins was the result of "defective production equipment" and "the 'clearing' of certain aged solar inventory." (Compl. ¶ 48.)   The declining margins discussed in the April 20 press release were attributed to "shifting [currency] exchange rates." (Compl. ¶ 52.)   Neither announcement concerned improper revenue recognition, sham transactions or deficient controls, and thus did not reveal any "relevant truth" about the purported fraud.   Accordingly, these disclosures do not qualify as "corrective" and cannot establish loss causation. Dura Pharms., Inc., 544 U.S. at 342-43, 347; Lentell, 396 F.3d at 175; In re Initial Public Offering Sec. Litig., 399 F. Supp. 2d 261, 266 (S.D.N.Y. 2005) (where "an event-in this case, a failure to meet

38

earnings forecasts or a statement foreshadowing such a failure-
disabused the market of that belief does not mean that the event
disclosed the alleged scheme to the market.  In other words, a
failure to meet earnings forecasts has a <u>negative</u> effect on
stock prices, but not a <u>corrective</u> effect.  Such a failure does
not imply that defendants concealed a scheme to depress earnings
estimates and drive up prices." (emphasis in original)).

CSI's stock price declined after the Company issued a
press release on June 1, 2010 announcing a delay in the release
of its 1Q 2010 financials, the receipt of a subpoena from the
SEC, the initiation of an internal investigation by its Audit
Committee, and the possibility that it may revise its 4Q 2009
net revenue. (Compl. ¶¶ 69, 99.)

The announcement of a delay in the reporting of CSI's
1Q 2010 financials does not establish loss causation because it
fails to reveal the truth that CSI had engaged in sham sales,
secret consignments, or any wrongdoing asserted in the
Complaint.  <u>See</u> <u>In re Hansen Natural Corp. Sec. Litig.</u>, 527 F.
Supp. 2d 1142, 1162 (C.D. Cal. 2007) (disclosure that company
"would not be able to file its 10-Q for the third quarter of

39

2006 on time due to the Special Committee's investigation" not corrective).

The announcement of an SEC subpoena or an internal investigation is itself insufficient to plead loss causation. A disclosure must reveal more than just the existence of a subpoena or investigation. It must link the subpoena or investigation to the actual fraudulent conduct alleged in the complaint. See In re Omnicom Group, Inc. Sec. Litig., 597 F.3d 501, 510 (2d Cir. 2010) ("[P]laintiffs must show 'a sufficient connection between [the fraudulent conduct] and the losses suffered . . . .'" (citation omitted)).

Likewise, because the June 1, 2010 press release did not reveal to the market that such activity had occurred, it could not have caused Plaintiffs' losses. See In re Omnicom, 597 F.3d at 511 (noting that loss causation is only established where the fraud underlying the alleged false statements is revealed); Joffee v. Lehman Bros., Inc., 410 F. Supp. 2d 187, 191 (S.D.N.Y. 2006) (dismissing complaint where "Plaintiffs have not alleged any disclosure of the alleged scheme of which they complain"). The Complaint alleges that the Sunvalley revenue

was recognized improperly in 3Q 2009, not the 4Q 2009 period covered by this press release.

The Complaint alleges that a June 2, 2010 article admittedly "speculating" about why some CSI customers were returning goods contributed to a decline in CSI's stock price. (Compl. ¶¶ 70-71.) However, the raising of questions and speculation by analysts and commentators does not reveal any "truth" about an alleged fraud as required by Dura Pharms., Inc. See In re Omnicom, 597 F.3d at 512-13 (holding that the raising of questions or concerns, as well as "negative journalistic characterization of previously disclosed facts does not constitute a corrective disclosure"); Katyle v. Penn Nat'l Gaming, Inc., 637 F.3d 462, 477 (4th Cir. 2011) ("Sentiment simply is not enough to sufficiently plead loss causation. Speculation and conjecture, even a well-educated guess, in the context of market prognostication does not suffice to establish a fact."). Indeed, the analyst speculation identified by Plaintiffs was unrelated to the purported recording of revenue from sham sales alleged in the Complaint. (Compl. ¶ 70 ("speculating" that return of CSI goods could be linked to "a quality control problem," "double ordering by customers," or "certain customers going out of business").) Further, the June

41

2 TheStreet.com article did not correspond with a drop in CSI's stock price.   (Kutcher Decl. Ex. 9 at 1.)   Without a corresponding stock price decline, an announcement cannot establish loss causation.  Amorosa v. AOL Time Warner Inc., 409 F. App'x 412, 416-17 (2d Cir. 2011); Lentell, 396 F.3d at 173.

The Complaint does not allege that the February 19, April 20, and June 1, 2010 disclosures revealed any "truth" about the Sunvalley Sale or any other transaction.   None of CSI's partial disclosures discussed CSI's 3Q09 financials.   The Complaint has also failed to allege any disclosures that revealed the "truth" regarding CSI's purported recognition of revenue from any fake sales, including the Sunvalley Sale.  Loss causation is accordingly not adequately plead.  Dura Pharms., Inc., 544 U.S. at 342-43, 347; In re Omnicom, 541 F. Supp. 2d at 551.

Plaintiffs have not responded to Defendants' loss causation arguments.  An unalleged "materialization of the risk" theory of loss causation is advanced.   (Pls. Mem. 21-22; see also, e.g., Compl. ¶¶ 95, 97-99 ("the truth about Canadian Solar's financial results and prospects was revealed to the market through several partial disclosures").)   The

42

materialization of the risk theory requires the complaint to plead that Plaintiffs' purported "loss was foreseeable and caused by the materialization of the risk concealed by the fraudulent statement." ATSI Commc'ns, Inc., 493 F.3d at 107. The Complaint does not allege that Plaintiffs' market losses were caused by a materialization of the "risk" that CSI engaged in a "sham" transaction.

## The Complaint Fails To Allege Control Person Liability Adequately

To plead a claim under Section 20(a) of the Exchange Act, a complaint must allege "(1) a primary violation of the Act by a controlled person, (2) direct or indirect control by the defendant of the primary violator, and (3) 'culpable participation.'" Coronel v. Quanta Capital Holdings Ltd., 2009 WL 174656, at *24 (citations omitted); 15 U.S.C. § 78t(a). As concluded above, a primary violation under Section 10(b) has not been established. For the reasons described above with respect to scienter, none of the purported "control persons" were "culpable" participants in any alleged fraud. See In re Sec. Capital Assurance Ltd. Sec. Litig., 729 F. Supp. 2d 569, 602 (S.D.N.Y. 2010). Accordingly, the Section 20(a) claims are dismissed.

43

## Conclusions

Based on the conclusions set forth above, Defendants' motion is granted, and the Complaint is dismissed with leave granted to replead within 20 days.

It is so ordered.

New York, NY
March 3 0 , 2012

ROBERT W. SWEET
U.S.D.J.

44