N.Y.S.D. Case #
10-cv-4430(RWS)

13-1681-cv
*Tabak et al. v. Canadian Solar et al.*



# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.

1    At a stated term of the United States Court of Appeals for the Second Circuit,
2  held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of
3  New York, on the 20th day of December, two thousand and thirteen.
4
5  PRESENT:
6            DEBRA ANN LIVINGSTON,
7            SUSAN L. CARNEY,
8                  *Circuit Judges,*
9            JOHN G. KOELTL,*
10                 *District Judge.*
11  _____
12  HARRY TABAK *et al.*,
13                              *Plaintiffs-Appellants,*
14  CSIQ INVESTOR GROUP,
15
16                              *Movant-Appellant,*
17            -v.-                                   No. 13-1681-cv
18
19  CANADIAN SOLAR INC., ARTHUR CHIEN, SHAWN QU *et al.*,
20
21                              *Defendants-Appellees.*
    _____

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: January 16, 2014

*Judge John G. Koeltl, of the United States District Court for the Southern District of New York, sitting by designation.

MANDATE ISSUED ON 01/16/2014

1

2

_____

3                                         REED KATHREIN, (Steve W. Berman, *on the brief*), Hagens Berman Sobol Shapiro LLP, Seattle, Washington, *for Plaintiffs-Appellants*.

TIMOTHY P. CRUDO (David J. Schindler, Matthew L. Kutcher, *on the brief*), Latham & Watkins LLP, Los Angeles, California, *for Defendants-Appellees*.

**UPON DUE CONSIDERATION**, it is hereby **ORDERED, ADJUDGED**, and **DECREED** that the order of the District Court is **AFFIRMED.**

This appeal arises out of the dismissal of a securities class action brought by a class of persons ("Plaintiffs" or "Appellants") who purchased Canadian Solar Inc. ("CSI") common stock between October 13, 2009 and June 1, 2010. Plaintiffs filed an Amended Complaint on April 19, 2012, bringing claims against CSI and CSI officers Arthur Chien and Shawn Qu ("Defendants" or "Appellees") under Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder, as well as Section 20(a) of the Exchange Act.

On March 29, 2013, the United States District Court for the Southern District of New York (Sweet, *J.*) dismissed the Plaintiffs' Amended Complaint with prejudice. Plaintiffs timely appealed. We assume the parties' familiarity with the underlying facts and procedural history of the case, and with the issues on appeal.

2

1                                          *   *   *

2          We review "*de novo* a District Court's dismissal for failure to state a claim,

3   assuming all well-pleaded, nonconclusory factual allegations in the complaint to be

4   true." *Pacific Inv. Management Co. LLC v. Mayer Brown LLP*, 603 F.3d 144, 150 (2d Cir.

5   2010) (internal citation omitted).  To survive a motion to dismiss, the Plaintiffs must

6   meet the rigorous pleading requirements of both Federal Rule of Civil Procedure

7   9(b) and the Private Securities Litigation Reform Act of 1995 ("PSLRA").  *See Tellabs,*

8   *Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007).  To state a claim under

9   Section 10(b), the Plaintiffs must allege (1) a material misrepresentation; (2) scienter;

10  (3) a connection with the purchase or sale of a security; (4) reliance; (5) economic

11  loss; and (6) loss causation.  *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341-42

12  (2005).  The district court dismissed the Plaintiffs' Amended Complaint for three

13  independent reasons, holding that the Plaintiffs failed to allege adequately a

14  material false statement, scienter, and loss causation.  Addressing only the material

15  misrepresentation and scienter requirements, we affirm substantially for the reasons

16  stated in the district court's careful and clear Opinion dated March 28, 2013.

17          **Material Misrepresentation**

18          Plaintiffs' Amended Complaint alleges that CSI's various statements about its

3

3Q2009 performance were materially false because they reflected improperly recognized revenue from the "sham" Sun Valley transaction. The Amended Complaint's factual allegations are based on (1) allegations from a complaint in a separate Sun Valley case, and (2) allegations from three confidential witnesses (listed as CW1-CW4 in the Amended Complaint, with CW3 and CW4 now identified as a single individual).

Assuming *arguendo* that Plaintiffs adequately pled that CSI made misstatements regarding its 3Q2009 financial performance, the misstatements based on improperly recognized revenue from the Sun Valley were not material.[1] To state a claim, Plaintiffs must plead particularized facts demonstrating that the Sun Valley sale was material in light of CSI's overall financial picture. *Decker v. Massey-Ferguson, Ltd.*, 681 F.2d 111, 116 (2d Cir. 1982) (affirming dismissal of complaint in part because "complaint contains no factual allegations to demonstrate

---

[1] Plaintiffs' allegations regarding additional unidentified transactions fail to turn the allegedly improperly recognized revenue from the Sun Valley transaction into a material amount. Plaintiffs only speculate that there were "possibly" other "sham" sales with unnamed customers. Plaintiffs do not allege the most basic facts about these transactions including the customer names, the dates, or the amount of the transactions. Therefore when considering whether CSI's alleged misstatements were material we can consider only the amount allegedly recognized from the Sun Valley transaction.

1    the materiality of the alleged overvaluation in light of these overall figures").  A fact

2    "is material if there is a substantial likelihood that a reasonable shareholder would

3    consider it important in deciding how to [act]." *Basic Inc. v. Levinson*, 485 U.S. 224,

4    231 (1988).  To determine materiality, courts consider both quantitative and

5    qualitative factors, and although there is no bright-line numerical test, this Court has

6    looked to the SEC's presumption that "a numerical threshold, such as 5%, may

7    provide the basis for a preliminary assumption that . . . a deviation of less than the

8    specified percentage with respect to a particular item on the registrant's financial

9    statements is unlikely to be material."  SEC Staff Accounting Bulletin No. 99, 64 Fed.

10    Reg. at 45,151; *ECA & Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase*

11    *Co.*, 553 F.3d 187, 204 (2d Cir. 2009).

12        A review of both quantitative and qualitative factors shows that the alleged

13    misrepresentations in CSI's 3Q2009 financial statements, supposedly flawed for their

14    incorporation of improperly recognized revenue from the Sun Valley transaction,

15    were *immaterial* as a matter of law.  The Sun Valley transaction caused CSI to

16    allegedly over-report $5,764,430 in revenue for 3Q2009.  This represented only 2.7%

17    of CSI's total 3Q2009 revenue and just 0.9% of CSI's total 2009 revenue.  Because this

18    revenue was only a small portion of CSI's total operations, there is not a "substantial

1    likelihood" considering the amount of this misstatement, it "would have been

2    viewed by the reasonable investor as having significantly altered the total mix of

3    information made available." *Hutchison v. Deutsche Bank Secs. Inc.*, 647 F.3d 479, 485

4    (2d Cir. 2011) (citations omitted).

5          The qualitative factors argued by Plaintiffs do not change this conclusion.

6    First, Plaintiffs argue that the percentage of revenue should be analyzed in relation

7    to the "America" region.  Yet, the "America" region accounted for only a small

8    portion (5.9% during FY 2009) of CSI's overall revenue, and Plaintiffs have failed to

9    plead any reason why a reasonable investor would consider revenue from this one

10   region standing alone material when making an investment decision.  Second,

11   Plaintiffs' implication that the misrepresentation enabled CSI to hide a downward

12   trend is factually incorrect.  CSI reported a downward trend in its revenue of 15.57%

13   between 3Q2008 and 3Q2009.  Accordingly, if the Sun Valley transaction was

14   improperly recorded in CSI's 3Q2009 revenue, its inclusion did not mask a

15   downward trend in CSI's revenue but merely diminished the downward trend by

16   a marginal amount.  Third, the fact that the alleged misrepresentation occurred

17   weeks before CSI's stock offering is not relevant.  The timing of the stock offering

18   does not change the fact that the Sun Valley sale represented only a small fraction

1    of CSI's quarterly and yearly revenue.  Plaintiffs have not pled any facts to show that

2    an investor purchasing stock from the follow-on stock offering as compared to the

3    open market would find the revenue from this small sale to be material.[2]

4         The Plaintiffs also allege that CSI's statements about its 4Q2009 performance

5    were materially false because they incorporated revenue from improperly recorded

6    sham transactions.  Although the Plaintiffs have identified amounts that they

7    contend were improperly included in revenues, the Plaintiffs have not explained

8    why the statements pertaining to CSI's 4Q2009 financial performance were

9    fraudulent as Federal Rule of Civil Procedure 9(b) and the PSLRA require.  While

10   the Plaintiffs allege that the statements were fraudulent because they were

11   predicated on "sham transactions," the Plaintiffs do not state with particularity any

12   facts about these transactions to support a conclusion that they were sham

13   transactions.  Instead, the Plaintiffs point to CSI's August restatement to argue that

14   the $21 million reduction in 4Q2009 revenue must have resulted from sham sales.

15   The Plaintiffs also allege that the 4Q2009 statements were fraudulent because CSI

16   recorded a $18 million reserve to account for the possibility that a "German

---

[2]Because the misstatements regarding 3Q2009 are immaterial, so too is the defendant's alleged failure to disclose CSI's departure from internal controls in generating the 3Q2009 financial statements.

customer" and an "Italian subsidiary of a U.S. customer" might not make certain payments due to CSI.  These allegations are wholly conclusory with respect to alleging fraud because they do not specify any particulars of the alleged sham transaction or why an individual transaction was a sham transaction.  Accordingly, the Plaintiffs allegations are insufficient to satisfy the particularity requirements of Rule 9(b) and the PSLRA.  *ATSI v. Commc'ns Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 106 (2d Cir. 2007).[3]

**Scienter**

To maintain a Section 10(b) claim, Plaintiffs must allege "with particularity" facts giving rise to a "strong inference that the defendant acted with the required state of mind," 15 U.S.C. § 78u-4(b)(2)(A), which is an "intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976).  This inference of scienter "must be more than merely plausible or reasonable – it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007).  To satisfy this pleading standard a complaint must allege particularized facts that either (1)

---

[3]For the same reason, the Plaintiffs have failed to allege that the Defendants fraudulently misrepresented CSI's compliance with its internal controls in generating the 4Q2009 financial statements.

1    demonstrate "defendants had both motive and opportunity to commit fraud," or (2)

2    "constitute strong circumstantial evidence of conscious misbehavior or

3    recklessness." *Kalnit v. Eichler*, 264 F.3d 131, 138-39 (2d Cir. 2001).

4         Plaintiffs argue that they properly alleged motive because CSI had short term

5    loans coming due and had no available means to pay down those loans other than

6    by issuing more stock.  Moreover, Plaintiffs allege that Qu, CSI's CEO, was

7    motivated to price the offering as high as possible to avoid economic  dilution.

8    These allegations fail sufficiently to allege a concrete and personal benefit to

9    establish scienter.   As we have held, a desire to raise capital to repay loans is

10   insufficient to establish motive because it is a goal "possessed by virtually all

11   corporate insiders." *South Cherry St., LLC v. Hennessee Group LLC*, 573 F.3d 98, 109

12   (2d Cir. 2009).  As an application of this general rule, a motive "to prevent the

13   negative ramifications of a resultant drop of. . .a stock price. . .is far too generalized

14   (and generalizable) to allege the proper 'concrete and personal' benefit required"

15   even if "such a drop would allegedly threaten the 'survival' of a company." *In re*

16   *PXRE Group, Ltd. Secs. Litig.*, 600 F. Supp. 2d 510, 532 (S.D.N.Y. 2009) (citing *Kalnit*,

17   264 F.3d at 142).  Because the pressure to increase stock price to avoid bankruptcy

18   is insufficient to allege motive, the pressure to increase stock price to improve a

9

follow-on stock offering is also not sufficient.  Here, Plaintiffs do not allege that

absent reporting the Sun Valley revenue CSI would have been unable to complete

the stock offering or that the possible drop in stock price would deflate the stock

offering such that CSI would have been unable to raise enough funds to pay down

its short term debt.  The Plaintiffs' only remaining argument is that Qu was

motivated to inflate CSI's stock price in order to avoid economic dilution.  This

argument is unavailing because the general motivation to act in one's own economic

self interest is insufficient to allege motive.  *See Kalnit*, 264 F.3d at 139-40; *Ganino v.*

*Citizens Utilities Co.*, 228 F.3d 154, 170 (2d Cir. 2000).[4]

Plaintiffs have also failed to allege scienter under a conscious misbehavior or

recklessness theory.  Where, as here, a complaint fails to allege motive, "the strength

of the circumstantial allegations [of conscious misbehavior or recklessness] must be

correspondingly greater."  *ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP*

*Morgan Chase Co.*, 553 F.3d 187, 198–99 (2d Cir. 2009) (internal quotation marks

---

[4]The Plaintiffs do allege that Qu was motivated to inflate CSI's stock price before the secondary offering in order to ensure that CSI could repay a loan he made to CSI.  However the outstanding loan at issue was for only $93,641.  Absent additional allegations of motive, which are not present in this case, this amount is insufficient to plead an individualized motive.  *See, e.g.*, *Rothman v. Gregor*, 220 F.3d 81, 94 (2d Cir. 2000); *San Leandro Emergency Med. Grp. Profit Sharing Plan v. Phillip Morris Co. Inc.*, 75 F.3d 801, 813-14 (2d Cir. 1996).

1    omitted).   We affirm the district court's holding that Plaintiffs have failed to plead

2    conscious misbehavior or recklessness for substantially the reasons outlined in its

3    March 28, 2013 opinion.

4        We have reviewed Appellants' remaining arguments and find them to be

5    without merit.   For the foregoing reasons, the judgment of the District Court is

6    **AFFIRMED.**

7                    FOR THE COURT:

8                    Catherine O'Hagan Wolfe, Clerk

9

10

11

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

11